IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

MARA NICHOLE KINOFF,

        Plaintiff,

v.

COLORADO SCHOOL OF MINES BOARD OF TRUSTEES, in its official capacity, KARIN RANTA-CURRAN, in her individual capacity, and DOES 1 – 10, whose true names are unknown,

        Defendants.

Case No. 1:21-cv-02657-RMR

---

**FIRST AMENDED COMPLAINT FOR VIOLATIONS OF TITLE IX OF THE EDUCATION ACT AMENDMENTS OF 1972 AND 42 U.S.C § 1983**

---

NOW COMES Plaintiff, **MARA NICHOLE KINOFF**, by and through her attorneys, The Law Office of Keith Altman, and for her Complaint against Defendants, hereby states the following:

1.    This is an action seeking damages for Defendant's violation of Title IX of The Education Act Amendments of 1972 and 42 U.S.C § 1983.

## PARTIES

2. Plaintiff Mara Kinoff ("Mrs. Kinoff") is a former student of the Colorado School of Mines. Mrs. Kinoff attended the Colorado School of Mines from Fall 2014 until Spring 2016. She was a minor child until August 2, 2015.

3. Colorado School of Mines is a public research university located in Golden, Colorado. CSM is governed through Defendant CSM Board of Trustees (herein after "CSM").

4. On information and belief, at all times relevant to this action, Defendant Karin Ranta-Curran was employed by CSM as the lead Title IX coordinator.

5. On information and belief, Doe Defendants were employed by CSM and worked in CSM's Title IX office or were otherwise involved in Mrs. Kinoff's Title IX action.

## JURISDICTION & VENUE

6. This action arises under the laws of the United States, and therefore this Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 (federal question).

7. This action arises under the following federal statutes: Title IX of The Education Act Amendments of 1972 and 42 U.S.C § 1983.

8. This Court properly exercises personal jurisdiction over Defendant CSM Board of Trustees on the grounds that it is conducting business within the State of Colorado.

**FIRST AMENDED COMPLAINT**               **CASE NO. 1:21-cv-02657-RMR**

9. This Court properly exercises personal jurisdiction over Defendant Karin Ranta-Curran on the grounds that she is domiciled within the State of Colorado and was an employee of CSM at all relevant times herein and further personally violated certain rights and policies, the effects of which were felt in the State of Colorado.

10. This Court properly exercises personal jurisdiction over Doe Defendants on the grounds that they are domiciled within the State of Colorado and were employees of CSM at all relevant times herein and personally violated certain rights and policies, the effects of which were felt in the State of Colorado.

11. The proper venue for this case is in the United States District Court of Colorado because the events relevant to this action occurred within the State of Colorado.

## FACTUAL ALLEGATIONS

12. In 2014, at age sixteen, Mrs. Kinoff graduated high school. She was her class Valedictorian. Her exceptional academic performance earned her an Army ROTC scholarship at CSM, and she began classes at CSM during the Fall semester of 2014, at the age of seventeen.

13. In November 2014, Mrs. Kinoff began a romantic relationship with a fellow student and Army cadet (hereinafter "Student").

14. Student quickly began exhibiting abusive behavior towards Mrs. Kinoff. For the duration of the relationship, Mrs. Kinoff was seventeen years old. Student

exploited Mrs. Kinoff's lack of experience to manipulate her. Student acted in a controlling manner towards Mrs. Kinoff and physically assaulted her on several occasions.

15. The abusive behavior culminated on January 24, 2015. After arguing with Mrs. Kinoff about what clothes he would allow her to wear to a party that evening, Student slapped Mrs. Kinoff with enough force to knock the wind out of her. After a brief struggle, Mrs. Kinoff was able to gather her belongings and run away from Student. Later that night, Student left multiple voicemails on Mrs. Kinoff's phone threatening to commit suicide if she did not return to him. The ordeal put Mrs. Kinoff into a state of emotional turmoil, causing her to have multiple panic attacks throughout the night.

16. Because Mrs. Kinoff did not feel safe reporting for training where Student would be present, Mrs. Kinoff reported the domestic violence to her ROTC Captain. Defendant Ranta-Curran was the lead Title IX Coordinator at CSM during the entire duration of Mrs. Kinoff's enrollment. Mrs. Kinoff was never informed by Defendant Ranta-Curran or any Doe Defendant if a Title IX or police report had been filed on her behalf.

17. However, CSM, clearly had knowledge of her report. In late January of 2015, an employee of CSM visited Mrs. Kinoff to share instructions on how to

schedule a counseling appointment. This was the only support that Mrs. Kinoff received from anyone at CSM.

18. Mrs. Kinoff was never contacted by anyone at the CSM Title IX office at any point during her enrollment at CSM.

19. Mrs. Kinoff no longer felt safe on CSM campus due to her fear of Student. Her fear and anxiety rendered Mrs. Kinoff unable to travel to and from her classes unless she was in a large group.

20. In February 2015, two officers from the CSM ROTC program demanded that Mrs. Kinoff report for training even with Student present in the same building.

21. In March 2015, Mrs. Kinoff dropped out of the CSM ROTC program due to feeling unsafe and unsupported.

22. In August 2015, Mrs. Kinoff moved off-campus because she no longer felt safe living in her dorm.

23. By January 2016, Mrs. Kinoff had fallen into a deep depression and her feelings of anxiety had intensified. Mrs. Kinoff's deteriorating mental state prevented her from undertaking basic tasks. Her grades slipped to the point that she was placed on academic probation.

24. In May 2016, Mrs. Kinoff made the decision to withdraw from CSM to focus on her mental health challenges.

25. Student never faced disciplinary consequences and graduated from CSM in 2016.

26. Year later, on June 25, 2020, Mrs. Kinoff sent an email to the current CSM Title IX coordinator inquiring whether a Title IX report had ever been filed regarding the domestic violence she suffered from Student. Mrs. Kinoff was informed that a Title IX report had been filed and closed on January 30, 2015.

27. This correspondence, some five years after the incident happened and was reported, was the first time Mrs. Kinoff was made aware of the Title IX report.

28. The Title IX report contained significant inaccuracies, including but not limited to, the fact that the report failed to note that Mrs. Kinoff was a minor at the time. It also incorrectly categorized the incident as one occurring between a student and a non-student. The record also did not indicate that a police report was filed, and incorrectly stated that Mrs. Kinoff had received academic support.

**FIRST CAUSE OF ACTION**
**Violation of Title IX of The Education Act Amendments of 1972**
**(Against Defendant CSM)**

29. Plaintiff incorporates by reference as if fully stated herein, Paragraph Nos. 1-28 of her Complaint in their entirety.

30. Title IX of the Education Act Amendments of 1972 prohibits discrimination based on sex in educational institutions receiving federal funding.

Schools receiving federal funding are required to employ at least one Title IX coordinator, a staff member responsible for Title IX compliance. 34 CFR 106.44 provides that such institutions must respond affirmatively when they receive "actual knowledge" that a student may have been discriminated against based on gender. This creates a duty for institutions to cause their Title IX coordinator to promptly investigate allegations of sex-based discrimination and provide accommodations to students that have suffered sex-based discrimination.

31. At all times relevant to this action, Defendant CSM was a public university that received federal financial assistance through grants and federally assisted tuition payments collected from students. Thus, Defendant CSM is a recipient of Federal financial assistant for purposes of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681.

32. At all times herein mentioned Defendant Ranta-Curran was employed as the lead Title IX Coordinator at CSM.

33. The domestic violence Mrs. Kinoff suffered at the hands of Student was perpetrated against Mrs. Kinoff specifically based on Mrs. Kinoff's gender. Mrs. Kinoff is female. Student is male.

34. CSM had "actual knowledge" of this gender-based violence. "Actual knowledge" was demonstrated when in late January of 2015, an employee of CSM visited Mrs. Kinoff to share instructions on how to schedule a counseling

appointment. Furthermore, CSM clearly had "actual knowledge" sufficient to make a Title IX report on January 30, 2015, pertaining to Mrs. Kinoff, although it was not acted upon.   Therefore, CSM was legally required under Title IX to conduct a full and thorough investigation into the gender-based violence suffered by Mrs. Kinoff.

35. CSM's duty to investigate was clearly established at all times relevant to this action.

36. Defendants violated their Title IX obligations and was deliberately indifferent to the sex-based discrimination suffered by Mrs. Kinoff when:

> i. Defendant CSM through Defendant Ranta-Curran and the Doe Defendants opened and closed Mrs. Kinoff's Title IX investigation on the same day thereby failing to initiate any meaningful Title IX investigation into Mrs. Kinoff's domestic violence allegation.
>
> ii. Defendant CSM through Defendant Ranta-Curran and the Doe Defendants failed to undertake any affirmative actions to ensure that Mrs. Kinoff felt safe on CSM campus.

37. Defendants' lack of due care in their Title IX investigation is evident from the following:

      i. Defendant CSM through Defendant Ranta-Curran and the Doe Defendants failed to undertake any communication with Mrs. Kinoff regarding the status of her Title IX report.

      ii. Defendant CSM through Defendant Ranta-Curran and the Doe Defendants incorrectly characterized Mrs. Kinoff's incident as one between a student and non-student in their Title IX report.

38. As a result of Defendants' violations, Mrs. Kinoff suffered profound disruptions to her sense of safety while enrolled at CSM. Because of Defendant's actions, Mrs. Kinoff was forced to live in constant fear of encountering on CSM campus, the individual who had perpetrated domestic violence against her. Such reactions are well known to be extremely common among survivors of domestic violence.

39. This constant fear took a serious toll on Mrs. Kinoff's mental health and caused her develop debilitating anxiety and depression which in turn caused severe and pervasive disruptions to Mrs. Kinoff's education at CSM including but not limited to:

      i. Dropping out of the CSM ROTC program due to feeling unsafe and unsupported.

      ii. Moving off-campus because Mrs. Kinoff no longer felt safe living in her dorm.

    iii. Being unable to undertake basic life tasks on her own because of the extent of Mrs. Kinoff's depression.

    iv. Being unable to maintain her, usually high grades and being placed on academic probation

40. Ultimately, the psychological suffering that Mrs. Kinoff endured because of Defendant's actions forced her to drop out of CSM, thereby abandoning her education at CSM.

41. Mrs. Kinoff did not become aware of Defendant CSM's Title IX violations until June 25, 2020.

42. Therefore, as a direct and proximate result of Defendants' unlawful sex-based discrimination, Mrs. Kinoff was prevented from enjoying the full benefits of her education at CSM.

43. The emotional, psychological, and financial distress that the Mrs. Kinoff has suffered and will continue to suffer was caused directly and proximately by the Defendant's unlawful conduct.

## SECOND CAUSE OF ACTION
### 42 U.S.C § 1983 Equal Protection Violations
**(Against Defendant Ranta-Curran and Doe Defendants)**

44. Plaintiff incorporates by reference as if fully stated herein, Paragraph Nos. 1-28 of her Complaint in their entirety.

45. Through their acts and omissions herein, Defendant Ranta-Curran and Doe Defendants violated Mrs. Kinoff's clearly established constitutional right to equal protection under the law.

46. At all times herein mentioned Defendant Ranta-Curran was employed as the lead Title IX Coordinator at CSM and was acting under color of law.

47. At all times herein mentioned DOE Defendants were employed CSM's Title IX office or were otherwise involved in Mrs. Kinoff's Title IX report and were acting under color of law.

48. The domestic violence Mrs. Kinoff suffered at the hands of Student was perpetrated against Mrs. Kinoff specifically based on Mrs. Kinoff's sex. Mrs. Kinoff is female. Student is male.

49. The domestic violence Mrs. Kinoff suffered at the hands of Student was therefore sex-based violence and sexual harassment.

50. Defendant Ranta-Curran and Doe Defendants had "actual knowledge" of this sex-based violence. Defendant Ranta-Curran and Doe Defendants created a Title IX report on January 30, 2015, pertaining to Mrs. Kinoff, although it was not acted upon.

51. Defendant Ranta-Curran and Doe Defendants acted with deliberate indifference to the sex-based discrimination suffered by Mrs. Kinoff and consciously acquiesced to it when:

      i. Having "actual knowledge" of the sex-based violence suffered by Mrs. Kinoff, Defendant Ranta-Curran and the Doe Defendants were aware that they had a duty under Title IX to investigate Mrs. Kinoff's report of sex-based violence.

      ii. Defendant Ranta-Curran and the Doe Defendants opened and closed Mrs. Kinoff's Title IX investigation on the same day thereby failing to initiate any meaningful Title IX investigation into Mrs. Kinoff's domestic violence allegation.

      iii. Defendant Ranta-Curran and the Doe Defendants failed to undertake any affirmative actions to ensure that Mrs. Kinoff felt safe on CSM campus.

52. Defendants' lack of due care in their Title IX investigation is evident from the following:

      i. Defendant CSM through Defendant Ranta-Curran and the Doe Defendants failed to undertake any communication with Mrs. Kinoff regarding the status of her Title IX report.

      ii. Defendant CSM through Defendant Ranta-Curran and the Doe Defendants incorrectly characterized Mrs. Kinoff's incident as one between a student and non-student in their Title IX report.

53. As a result of Defendants' violations, Mrs. Kinoff suffered profound disruptions to her sense of safety while enrolled at CSM. Because of Defendant's actions, Mrs. Kinoff was forced to live in constant fear of encountering on CSM campus, the individual who had perpetrated domestic violence against her. Such reactions are well known to be extremely common among survivors of domestic violence.

54. This constant fear took a serious toll on Mrs. Kinoff's mental health and caused her develop debilitating anxiety and depression which in turn caused severe and pervasive disruptions to Mrs. Kinoff's education at CSM including but not limited to:

      i. Dropping out of the CSM ROTC program due to feeling unsafe and unsupported.

     ii. Moving off-campus because Mrs. Kinoff no longer felt safe living in her dorm.

    iii. Being unable to undertake basic life tasks on her own because of the extent of Mrs. Kinoff's depression.

    iv. Being unable to maintain her, usually high grades and being placed on academic probation

55. Ultimately, the psychological suffering that Mrs. Kinoff endured because of Defendant's actions forced her to drop out of CSM, thereby abandoning her education at CSM.

56. By acting with deliberate indifference in failing to meaningfully address the sex-based violence suffered by Mrs. Kinoff, Defendants Ranta-Curran and Doe Defendants discriminated against Mrs. Kinoff on the basis of her sex.

57. Mrs. Kinoff did not become aware that her constitutional rights had been violated until June 25, 2020.

58. The emotional, psychological, and financial distress that the Mrs. Kinoff has suffered and will continue to suffer was caused directly and proximately by the Defendant's unlawful conduct.

### THIRD CAUSE OF ACTION
### 42 U.S.C § 1983 Substantive Due Process Violations
### (Against Defendant Ranta-Curran and Doe Defendants)

59. Plaintiff incorporates by reference as if fully stated herein, Paragraph Nos. 1-28 of her Complaint in their entirety.

60. Through their acts and omissions herein, Defendant Ranta-Curran and Doe Defendants violated Mrs. Kinoff's clearly established fundamental constitutional right to be free of a state official's creation of danger.

61. At all times herein mentioned Defendant Ranta-Curran was employed as the lead Title IX Coordinator at CSM and was acting under color of law.

62. At all times herein mentioned DOE Defendants were employed CSM's Title IX office or were otherwise involved in Mrs. Kinoff's Title IX report and were acting under color of law.

63. Defendant Ranta-Curran and Doe Defendants had "actual knowledge" of the domestic violence perpetrated by Student against Mrs. Kinoff. Defendant Ranta-Curran and Doe Defendants created a Title IX report on January 30, 2015, pertaining to Mrs. Kinoff, although it was not acted upon.

64. Defendant Ranta-Curran and Doe Defendants engaged in the following affirmative acts:

> i. Having "actual knowledge" of the sex-based violence suffered by Mrs. Kinoff, Defendant Ranta-Curran and the Doe Defendants were aware that they had a duty under Title IX to investigate Mrs. Kinoff's report of sex-based violence.
>
> ii. Defendant Ranta-Curran and the Doe Defendants opened and closed Mrs. Kinoff's Title IX investigation on the same day thereby failing to initiate any meaningful Title IX investigation into Mrs. Kinoff's domestic violence allegation and closing off the possibility of providing Mrs. Kinoff with support.

65. As a result of Defendants' affirmative actions, Mrs. Kinoff suffered profound risks to her safety while enrolled at CSM. Mrs. Kinoff was forced to live

unprotected and in proximity to the individual who had already perpetrated domestic violence against her. Mrs. Kinoff was thereby constantly exposed to the known risk of physical danger posed by this individual.

66. These actions by Defendants placed Mrs. Kinoff in a situation of increased danger.

67. Mrs. Kinoff was a member of a limited and specifically definable group. The group was that of woman that have suffered domestic violence while attending a public University.

68. Because Defendants were aware that Student was accused of previously perpetrating domestic violence against Mrs. Kinoff, it was readily foreseeable to Defendants that he would continue to pose a danger to Mrs. Kinoff if she was not provided with protection or support to curtail that danger. Defendants' actions therefore placed Mrs. Kinoff in a substantial risk of serious, immediate, and proximate harm.

69. Defendants Ranta-Curran and Doe Defendants consciously disregarded the risk posed by Student to Mrs. Kinoff when:

> i. Having "actual knowledge" of the sex-based violence suffered by Mrs. Kinoff, Defendant Ranta-Curran and the Doe Defendants were aware that they had a duty under Title IX to investigate Mrs. Kinoff's report of sex-based violence.

  ii. Defendant Ranta-Curran and the Doe Defendants opened and closed Mrs. Kinoff's Title IX investigation on the same day thereby failing to initiate any meaningful Title IX investigation into Mrs. Kinoff's domestic violence allegation and closing off the possibility of providing Mrs. Kinoff with support.

70. The constant fear suffered by Mrs. Kinoff took a serious toll on her mental health and caused her develop debilitating anxiety and depression which in turn caused severe and pervasive disruptions to Mrs. Kinoff's education at CSM including but not limited to:

  i. Dropping out of the CSM ROTC program due to feeling unsafe and unsupported.

  ii. Moving off-campus because Mrs. Kinoff no longer felt safe living in her dorm.

  iii. Being unable to undertake basic life tasks on her own because of the extent of Mrs. Kinoff's depression.

  iv. Being unable to maintain her, usually high grades and being placed on academic probation

71. Ultimately, the psychological suffering that Mrs. Kinoff endured because of Defendant's actions forced her to drop out of CSM, thereby abandoning her education at CSM.

72. By acting with deliberate indifference in failing to meaningfully address the domestic suffered by Mrs. Kinoff, Defendants Ranta-Curran and Doe Defendants actions was conscience shocking.

73. Mrs. Kinoff did not become aware that her constitutional rights had been violated until June 25, 2020.

74. The emotional, psychological, and financial distress that the Mrs. Kinoff has suffered and will continue to suffer was caused directly and proximately by the Defendant's unlawful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Mara Nichole Kinoff requests that this Court grant her relief as follows:

(1) Compensatory damages for monetary loss, damage to reputation, humiliation, mental anguish, and emotional distress.

(2) Punitive damages against the Defendants.

(3) Attorneys' fees.

(4) Costs of the suit.

(5) Injunctive relief; and

(6) Such other relief as the Court may deem proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues stated in this action.

Date: February 25, 2022

        Respectfully Submitted,

        */s/Keith Altman*
        Keith Altman, Esq.
        The Law Office of Keith Altman
        33228 West 12 Mile Road - Suite 375
        Farmington Hills, Michigan 48334
        Telephone: (248) 987-8929
        keithaltman@kaltmanlaw.com
        A*ttorney for Plaintiff Mara Kinoff*

# **CERTIFICATE OF SERVICE**

I hereby certify that on February 25, 2022, I electronically filed the above document with the clerk of the Court using CM/ECF, which will send electronic notification of such filing to all registered counsel.

        /s/ Keith Altman
        Keith Altman, Esq.
        The Law Office of Keith Altman