IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02657-RMR-KLM

MARA NICHOLE KINOFF,

Plaintiff,

v.

COLORADO SCHOOL OF MINES BOARD OF TRUSTEES, et al.,

Defendants.

## MOTION TO DISMISS FIRST AMENDED COMPLAINT

The Board of Trustees of the Colorado School of Mines and Karin Ranta-Curran, by and through the Colorado Attorney General, move to dismiss Plaintiff's First Amended Complaint [#21] ("FAC") pursuant to Fed. R. Civ. P. 12(b)(6) and the qualified immunity doctrine.

Pursuant to D.C.COLO.LCivR 7.1(a) and Civ. Practice Standard IV.N.1.a., undersigned conferred with counsel for Plaintiff. A draft of this motion was provided to Plaintiff's counsel on January 22, 2022, and on March 7, 2022. Counsel for the parties discussed this motion in conference calls on January 25 and February 15, 2022. Plaintiff opposes the relief requested herein.

### I. Background

The Colorado School of Mines (Mines) is a state entity that is subject to the control of Defendant Board of Trustees (the Board). *FAC* [#21] at ¶ 3; *see also* Colo. Rev. Stat. §§ 23-41-101, et seq. (statutorily creating Mines and the Board). Plaintiff Mara Nichole Kinoff was a student at Mines from Fall 2014 to Spring 2016. *FAC* [#21] at ¶ 2.

1

Kinoff was attending Mines on a scholarship from the Army Reserve Officers' Training Corps (Army ROTC). *Id.* at ¶ 12. Army ROTC is a part of the United States government. 10 U.S.C. § 2101, et seq. Mines must host Army ROTC to be eligible for federal funding. 10 U.S.C. § 983.[1]

In November 2014, Kinoff began a romantic relationship with an unidentified Army ROTC cadet. *FAC* [#21] at ¶ 13. The relationship was "abusive" and he "physically assaulted her on several occasions." *Id.* at ¶ 14. On January 24, 2015, the other cadet slapped Kinoff with enough force to knock the wind out of her. *Id.* at ¶ 16. After a brief struggle, Kinoff gathered her belongings and ran away. *Id.* Kinoff does not identify the location where this abuse occurred.

On an unidentified date, Kinoff reported "domestic violence" to the Army ROTC Captain. *Id.* at ¶ 16. ROTC cadre are active-duty members of the United States Army and federal employees. 10 U.S.C. § 2111. Active-duty Army personnel are generally prohibited from accepting concurrent State employment, 10 U.S.C. § 973(b)(3), and there is no allegation that the Captain was also a Mines employee.

Kinoff does not allege that she ever informed a Mines employee that she was assaulted or slapped by another Army cadet. However, in late January of 2015, an unidentified Mines employee provided Kinoff with instructions on how to schedule a counseling appointment. *FAC* [# 21] at ¶ 17. And Defendant Ranta-Curran allegedly filed and closed a "Title IX report" on January 30, 2015. *Id.* at ¶ 26. At the time, Ranta-Curran was the lead Title IX Coordinator at Mines. *Id.* at ¶ 16. Ranta-Curran never had contact

---

[1] Kinoff refers to Army ROTC as "the CSM ROTC program," but the Court is not bound by statements that are contrary to law.

with Kinoff, and there is no allegation that Kinoff attempted to contact Ranta-Curran or other employees in the Mines Title IX Office during her enrollment. *Id.* at ¶ 18.

In February 2015, two Army Officers ordered Kinoff to report for ROTC training even though the cadet who assaulted Kinoff was present. *Id.* at ¶ 20. There is no allegation that Mines knew of these orders or that Mines has the authority to interfere with the United States Army. In March 2015, Kinoff dropped out of Army ROTC due to feeling unsafe and unsupported. *Id.* at ¶ 21.

In August 2015, after the end of her freshman year, Kinoff moved off the Mines campus, allegedly because she did not feel safe in her dorm room. *Id.* at ¶ 21.[2] By January 2016, Kinoff had suffered a deteriorated mental state and her grades slipped to the point where she was placed on academic probation. *Id.* at ¶ 23. In May 2016, Kinoff withdrew from Mines. *Id.* at ¶¶ 20-22. There are no additional allegations as to what transpired between when Kinoff dropped out of Army ROTC in March 2015 and when she withdrew from Mines in May 2016.

The cadet who assaulted Kinoff never faced disciplinary consequences and graduated from Mines in 2016. *Id.* at ¶ 25.

On June 25, 2020, more than five years after the alleged assaults, Kinoff contacted the Mines Title IX office for the first time. *Id*. at ¶ 26. According to Kinoff, she learned that a Title IX report had been filed and closed on January 30, 2015, and that it contains significant inaccuracies. *Id.* at ¶¶ 26-28.

---

[2] Mines provides limited sophomore housing on a lottery basis, which is usually distinct from the freshman dormitories.

3

On September 30, 2021, almost seven years after the alleged assaults, Kinoff filed this lawsuit. Kinoff asserts that: (1) Mines violated Title IX; (2) Ranta-Curran violated Kinoff's right to equal protection; and (3) Ranta-Curran violated substantive due process. Plaintiff requests damages and unspecified injunctive relief.

## II. Legal Standard

### A. Federal Rule of Civil Procedure 12(b)(6)

The purpose of a Rule 12(b)(6) motion is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted"). To withstand such a motion, "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations" (*quoting Twombly*, 550 U.S. at 570)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (alteration in original, internal quotation marks omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). As the Tenth Circuit has explained, "the mere metaphysical possibility that [the] plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that [the] plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

### B. Qualified Immunity

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Frasier v. Evans*, 992 F.3d 1003, 1014 (10th Cir. 2021) (quoting *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (per curiam)). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Frasier*, 992 F.3d at 1014 (*quoting Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (internal alterations and quotation marks omitted)) (*citing Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam) ("Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.").

When qualified immunity is asserted in a motion to dismiss, the burden shifts to the plaintiff. *Estate of Vallina v. Petrescu*, 757 F. App'x 648, 651 n.1 (10th Cir. 2018) (unpublished).

To overcome the presumption of immunity, a plaintiff must satisfy a "heavy two-part burden," *Buck v. City of Albuquerque*, 549 F.3d 1269, 1277 (10th Cir. 2008), by proving (1) that her factual allegations establish the violation of a federal right and (2) that the right was clearly established at the time of the violative conduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The court has the discretion to consider these prongs in any order. *Leverington v. City of Colo. Springs*, 643 F.3d 719, 732 (10th Cir. 2011). "Failure on either qualified immunity element is fatal to the plaintiff's cause." *Kerns v. Bader*, 663 F.3d 1173, 1180 (10th Cir. 2011).

Usually, "to make such a showing of clearly established law in our circuit, the plaintiff must point to a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Frasier*, 992 F.3d at 1014 (internal alterations and quotation marks omitted). Normally, the right must be clearly established "in light of the specific context of the case, not as a broad general proposition." *Id.* (*citing Mullenix v. Luna*, 577 U.S. 7 (2015) (per curiam). However, "[w]e do not require a case directly on point, but existing precedent [nonetheless] must have placed the statutory or constitutional question beyond debate." *Frasier*, 992 F.3d at 1014 (*quoting Ashcroft v. al-Kidd*, 563 U.S. at 741 (alterations in original)). This means that, "under certain 'extreme circumstances' general constitutional principles established in the caselaw [sic] may give reasonable government officials fair warning that their conduct is constitutionally or statutorily unlawful." *Frasier*, 992 F.3d at 1015 (*citing Taylor v. Riojas*, 141 S. Ct. 52, 53 (2020) (per curiam)).

### III. ARGUMENT

**A. Statute of Limitations**

The statute of limitations for Title IX and § 1983 is determined by the relevant state's personal injury statute. *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1212-13 (10th Cir. 2014). The time of accrual is a matter of federal law and "it is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action, that is when the plaintiff can file suit and obtain relief." *Id.* at 1215 (*quoting Wallace v. Kato*, 549 U.S. 384 (2007)).

In Colorado, the statute of limitations for personal injury actions is two years. Colo. Rev. Stat. § 13-80-102.; *see Blake v. Dickason*, 997 F.2d 749, 750 (10th Cir.1993) (applying § 13-80-102 to § 1983); *Sandoval v. Archdioceses of Denver*, 8 P.3d 598, 606 (Colo. App. 2000) (applying § 13-80-102 to Title IX). Kinoff filed her complaint on September 30, 2021, and thus, to be actionable, Kinoff must show that the conduct giving rise to her claims accrued after September 30, 2019.

Kinoff alleges that she was slapped by the other cadet on January 24, 2015, and that she left Mines in May 2016 due to the failure of Defendants to protect her. *FAC* [#21] at ¶¶ 15 and 23. At the latest, Kinoff should have filed her lawsuit by either January 2017 or May 2018, and her claims are now barred.

**B. Title IX**

Title IX does not explicitly provide a private remedy; therefore, courts have provided an implied private right of action for monetary damages. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 280, 284 (1998). But "Title IX narrowly circumscribes the set of parties whose known acts of sexual harassment can trigger some duty to respond on the part of" a university. *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S.

7

629, 650 (1999). Thus, a university's liability is limited "to circumstances wherein the recipient exercises substantial control over both the harasser and the context in which the known harassment occurs." *Id.* at 645. Kinoff does not identify the location where the other cadet assaulted her, and does not allege that Mines had substantial control over that location.

Assuming that the harassment occurred at a location that Mines had substantial control over, "damages are available only where the behavior is so severe, pervasive, and objectively offensive that it denies victims the equal access to education that Title IX is designed to protect." *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 652 (1999). To meet this standard, the alleged harassment must rise to the level of having a "systemic effect" of denying equal access to an education. *Id.* A "single instance of sufficiently severe one-on-one peer harassment" is unlikely to have such a systemic effect in light of "the amount of litigation that would be invited by entertaining claims of official indifference to a single instance of one-on-one peer harassment." *Id.* at 652-53.

Kinoff asserts that the other cadet "physically assaulted her on several occasions," but does not allege how he assaulted her, where he assaulted her, when he assaulted her, or whom she informed of these assaults. *FAC* [#21] at ¶ 14. The only specific allegation is that on January 24, 2015, the other cadet slapped Kinoff "with enough force to knock the wind out of her," and they had a "brief struggle" before she was able to gather her belongings and run away. *Id.* at ¶ 15. While unfortunate, Kinoff's allegations do not rise to the level of having a "systemic effect" of denying equal access to an education.

In an exceptional case involving "horrific circumstances," such as the rape of two women by multiple assailants, a plaintiff may proceed under Title IX where she shows that the deliberate

8

indifference of a school caused her to be vulnerable to further harassment. *Farmer v. Kansas State Univ.*, 918 F.3d 1094, 1105 (10th Cir. 2019). In these circumstances, a plaintiff "can show the requisite harm … by alleging and proving that the prior sexual assaults were so grievous and the likelihood of continuing to encounter the sexual predators on campus so credible that [the school's] inaction by itself deprived them of the 'benefits ...under any education program ... receiving Federal financial assistance.'" *Id.* at 1106 (*quoting Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1119 (10th Cir. 2008)). Kinoff does not allege that the other cadet sexually assaulted her.

In *Farmer*, the victims of multiple rapes alleged "that the fear of running into their student-rapists caused them, among other things, to struggle in school, lose a scholarship, withdraw from activities KSU offers its students, and avoid going anywhere on campus without being accompanied by friends or sorority sisters." *Farmer*, 918 F.3d at 1105. Kinoff recites this formula and baldly alleges that: (1) she was afraid to travel alone on campus; (2) she moved off-campus because of her fear; (3) she fell into a deep depression, felt increased anxiety, and suffered from a deteriorated mental state; and (4) her grades fell and she decided to withdraw from Mines to focus on her mental health. *FAC* [#21] at ¶¶ 19, 22-24, and 38.

But the *Farmer* court emphasized that a "plaintiff's alleged fear of encountering her attacker must be objectively reasonable" and "[f]uture cases will undoubtedly be asked to draw lines on when a victim's fear of further sexual harassment is sufficient …." *Farmer*, 918 F.3d at 1105. This case involves physical abuse between romantic partners, not multiple sexual assaults. And the only specific allegation that Kinoff may have encountered her partner after the abuse, is a single incident where federal employees

9

ordered her to participate in a federal program. There is no allegation that Kinoff shared classes with her partner or otherwise encountered him on a regular basis. Kinoff has not plausibly alleged that the behavior of the other cadet was "so severe, pervasive, and objectively offensive" that it denied Kinoff equal access to an education at Mines. *Davis*, 526 U.S. at 652.

Assuming Kinoff could satisfy the threshold requirements detailed above, she does not adequately allege deliberate indifference. A university is deliberately indifferent "only where [its] response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Id.* at 648. The deliberate indifference test "is not a mere 'reasonableness' standard ...." *Id.* at 649. "Title IX does not require ... flawless investigations [or] perfect solutions." *Rost*, 511 F.3d at 1122 (quoting *Fitzgerald v. Barnstable Sch. Comm.*, 504 F.3d 165, 174 (1st Cir. 2007)). A "'showing of simple or even heightened negligence will not suffice' under the deliberate indifference standard." *Id.* (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 407 (1997)). Kinoff merely alleges that there were inaccuracies contained in the Title IX report, she does not allege that Mines failed to undertake any action.

## C. Qualified Immunity

### 1. Fourteenth Amendment Equal Protection Claim

In support of her equal protection claim, Kinoff simply reasserts her Title IX allegations. *Compare FAC* [#21] ¶¶ 29-43 *with* ¶¶ 44-48. While a plaintiff may assert parallel Title IX and equal protection claims, "Title IX's protections are narrower in some respects and broader in others." *Fitzgerald*, 555 U.S. at 256 (2009). Kinoff must satisfy different elements to establish liability under each claim. *See id.* at 257 ("Even where particular activities and particular defendants are subject to both Title IX and the Equal Protection Clause, the standards for establishing liability may not be wholly congruent.").

10

An equal protection violation occurs when the government treats someone differently from another person who is similarly situated, without adequate justification for the difference in treatment. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence*, 927 F.2d 1111, 1118 (10th Cir. 1991). As a threshold matter, Kinoff must demonstrate that she was treated differently from others who were similarly situated to her. *Brown v. Montoya*, 662 F.3d 1152, 1172-73 (10th Cir. 2011).

Additionally, Kinoff bears the burden of alleging discriminatory intent. To meet that burden, Kinoff must provide allegations demonstrating that a discriminatory purpose was a motivating factor in the decision she challenges. *Watson v. City of Kans. City, Kan.*, 857 F.2d 690, 694 (10th Cir. 1988). "'Discriminatory purpose ... implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker...selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979).

Kinoff does not allege either element of an equal protection claim, not even in a conclusory fashion. Therefore, she fails to satisfy the first prong of the qualified immunity test. Clause. *See Straley v. Utah Bd. of Pardons*, 582 F.3d 1208, 1215 (10th Cir. 2009) ("[B]are equal protection claims are simply too conclusory to permit a proper legal analysis.").

Similarly, Kinoff cannot satisfy the clearly established law prong of the qualified immunity test. "The law is clearly established when a Supreme Court or Tenth Circuit precedent is on point or the alleged right is clearly established from case law in other circuits." *Lowe v. Raemisch*, 864 F.3d 1205, 1208 (10th Cir. 2017). "The precedent is considered on point if it involves *materially similar conduct* or applies with *obvious clarity* to the conduct at issue." *Id.* (internal quotations marks and citations omitted, emphasis in original). It is incumbent upon

11

Kinoff to identify the required precedent, *Buck*, 549 F.3d at 1277, and Defendants were unable to find a Tenth Circuit or Supreme Court decision imposing liability under the Equal Protection Clause in circumstances similar to those alleged by Kinoff.

### 2. Fourteenth Amendment Substantive Due Process Claim

The Fourteenth Amendment does not impose on a state an affirmative obligation to ensure that its citizens are not deprived of life, liberty, or property. *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.,* 489 U.S. 189, 195 (1989). There are, however, two exceptions to this general rule: the "danger creation" theory and the "special relationship" doctrine. *See generally Uhlrig v. Harder,* 64 F.3d 567, 572 (10th Cir.1995) (providing an overview of the danger creation theory and the special relationship doctrine). Under both exceptions, a state has a constitutional duty to ensure that its citizens are not deprived of life, liberty, or property. *Id.*

Kinoff asserts that Ranta-Curran violated her "right to be free of a state official's creation of danger" and that Ranta-Curran's actions were "conscience shocking." ECF 21 ¶¶ 60 and 72. But the remainder of Kinoff's allegations do not plausibly support these conclusory statements and she fails to sufficiently allege application of the danger creation theory.[3]

In the Tenth Circuit, the "application of danger creation as a basis for § 1983 claims is reserved for exceptional circumstances." *Ruiz v. McDonnel*, 299 F.3d 1173, 1184 (10th Cir. 2002). To state a prima facie case, Kinoff must show that: (1) Ranta-Curran created the danger or increased Kinoff's vulnerability to it; (2) Kinoff was a member of a limited and specifically definable group; (3) Ranta-Curran's conduct put Kinoff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) Ranta-Curran acted recklessly in

---

[3] Kinoff does not appear to allege that the special relationship doctrine applies in this case.

conscious disregard of that risk; and (6) the conduct of Ranta-Curran, when viewed in total, shocks the conscience. *Id.* at 1182-82. Kinoff has not adequately alleged these elements.

With regard to elements one and three, the Tenth Circuit has characterized the danger creation theory as a "narrow exception" that "applies only when a state actor 'affirmatively acts to create, or increases a plaintiff's vulnerability to, danger from private violence.'" *Moore v. Guthrie*, 438 F.3d 1036, 1042 (10th Cir. 2006) (*quoting Currier v. Doran,* 242 F.3d 905, 923 (10th Cir.2001)). "Affirmative conduct for purposes of § 1983 should typically involve conduct that imposes an immediate threat of harm, which by its nature has a limited range and duration." *Ruiz*, 299 F.3d at 1183; *see also Gray v. Univ. of Colo. Hosp. Auth.*, 672 F.3d 909, 916 (10th Cir. 2012) (noting that invocation of the danger creation theory "necessarily involves affirmative conduct on the part of the state in placing the plaintiff in danger"). But Kinoff's claims are premised on the repeated allegations that Mines and Ranta-Curran *failed* to take action, not that they affirmatively acted to put her in danger. *See FAC* [#21] ¶¶ 36(i), 51(ii), 64(ii), and 70(ii) (alleging that Defendants are responsible for "failing to initiate any meaningful Title IX investigation"); ¶¶ 36(ii) and 51(iii) (alleging that "Defendants failed to undertake any affirmative actions to ensure that Mrs. Kinoff felt safe on CSM campus"); ¶¶ 37(i) and 52(i) (alleging that "Defendants failed to undertake any communication with Mr. Kinoff").

The only affirmative action alleged by Kinoff is that Ranta-Curran opened and closed a Title IX investigation on January 30, 2015. *FAC* [#21] at ¶ 64(ii). But the abuse from her romantic partner ended on January 24, 2015. *Id.* at ¶¶ 15 and 26. And "if the danger to the plaintiff existed prior to the state's intervention, then even if the state put the plaintiff back in that same danger, the state would not be liable because it could not have created a danger that

13

already existed." *Armijo by and through Chavez v. Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1263 (10th Cir. 1998).[4]

With regard to element four, that the risk was obvious or known, there is no allegation that Ranta-Curran had first-hand knowledge of the alleged abuse or how she obtained that knowledge. Instead, Kinoff alleges that she reported the abuse to the Army ROTC Captain but that she never spoke with Ranta-Curran or anyone else in the Mines Title IX Office. *Id.* at ¶¶ 16, 17, and 18. Kinoff does allege that Ranta-Curran created a Title IX report, but does not allege the contents of that report. *Id.* at ¶ 63. And Kinoff has not identified her alleged abuser. Kinoff's allegations do not plausibly suggest that the risk was obvious or known to Ranta-Curran.

With regard to elements five and six, Kinoff must "demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Uhlrig*, 64 F.3d at 574. "It is well settled that negligence is not sufficient to shock the conscience. In addition, a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power." *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1222 (10th Cir. 2006) (*quoting Moore*, 438 F.3d at 1040). As examples, federal courts have found a substantive due process violation when school officials paddle a nine-year-old until the paddle breaks and blood soaks through her clothes, but not when school officials force a mentally disabled ten-year-old to clean out a clogged toilet with his bare hands. *See Perry v. Taser Int'l Corp.*, 07-cv-00901-REB-MJW, 2008 WL 961559, *2 (D. Colo. April 8, 2008).

---

[4] In 2001, the District Court questioned application of *Armijo* to a "danger enhancement" theory as opposed to a "danger creation" theory. *Schnurr v. Bd. of Cnty. Commr's of Jefferson Cnty.*, 189 F. Supp. 2d 1105, 1127-28 (D. Colo. 2001). But the Tenth Circuit has consistently relied on the quoted language in addressing both theories since 2001. *See, e.g., Hubbard v. Okla. ex rel Okla. Dep't of Hum. Servs.*, 759 Fed. Appx. 693, 708 (10th Cir. 2018)

Kinoff's allegation of physical abuse by a single person is insufficient to establish that Ranta-Curran consciously disregarded a substantial risk or engaged in behavior that would shock the conscience of federal judges. *McClain v. Denver Health & Hosp. Auth.*, No. 17-CV-02238-PAB-NRN, 2018 WL 4698595, at *5 (D. Colo. Sept. 30, 2018) (finding that one instance of sexual assault on a patient did not shock the conscience). Further, allegations that a government actor "permitt[ed] unreasonable risks to continue" will generally be insufficient to satisfy this standard. *Id. (citing Ruiz*, 299 F.3d at 1184).

While the danger creation theory, as a general proposition, may be clearly established, the relevant inquiry is whether application of the theory is clearly established "in the light of the specific context" of Kinoff's allegations. *Frasier*, 992 F.3d at 1014. Based on a review of Tenth Circuit case law, it appears that the danger creation theory is generally associated with police action or child custody decisions. *See, e.g., Estate of Reat v. Rodriguez*, 824 F.3d 960, 966-67 (10th Cir. 2016) (holding that 911 operator was entitled to qualified immunity from danger creation theory claim because he "is unlike any of the defendants in our state-created danger cases" and the plaintiff "is unlike the victims in other state-created danger cases"). Defendants did not find a case from the Supreme Court or Tenth Circuit applying the danger creation theory in context of student-on-student harassment at a college or university. The Tenth Circuit briefly examined application of the danger creation theory to high school student-on-student harassment in *Seamons v. Snow*, but the Court found that the theory did not apply because the administrators did not limit the student's freedom to act on his own behalf and did not have the requisite intent to harm the student. 84 F.3d 1126, 1236 (10th Cir. 1996). Here, too, there is no plausible allegation that Ranta-Curran somehow limited Kinoff's freedom to act on her own behalf or that Ranta-Curran intended for Kinoff to be harmed.

## IV. CONCLUSION

For the reasons stated herein, Defendants respectfully request the Court dismiss Kinoff's claims with prejudice.

DATED this 11th day of March, 2022.

          PHILIP J. WEISER
          Attorney General

          */s/ Skip Spear*
          SKIPPERE SPEAR, No. 32601*
          Senior Assistant Attorney General
          Ralph L. Carr Colorado Judicial Center
          1300 Broadway, 6th Floor
          Denver, CO 80203
          (720) 508-6140
          skip.spear@coag.gov

          ATTORNEY FOR DEFENDANTS
          *counsel of record

## CERTIFICATE OF SERVICE

I certify that I served the foregoing **Motion to Dismiss First Amended Complaint** upon all parties herein by filing copies of same using the ECF System, this 11th day of March, 2022 addressed as follows:

Keith Altman
The Law Office of Keith Altman
33228 West 12 Mile Rd, Ste 375
Farmington Hills, MI 48334
keithaltman@kaltmanlaw.com
*Attorney for Plaintiff*


                                                        */s/ Jennifer Davis-Weiser*