UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

| | |
|---|---|
| MARA NICHOLE KINOFF, | Case No. 1:21-cv-02657-RMR |
| Plaintiff, | |
| v. | |
| COLORADO SCHOOL OF MINES BOARD OF TRUSTEES, in its official capacity, KARIN RANTA-CURRAN, in her individual capacity, and DOES 1 – 10, whose true names are unknown, | |
| Defendants. | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Plaintiff Mara Nichole Kinoff by and through her attorneys, the Law Office of Keith Altman, oppose Defendant's Motion to Dismiss Plaintiff's First Amended Complaint [#21] ("FAC").  [#23] ("MTD").

# I. FACTUAL BACKGROUND

This case arises from Defendants'[1] deliberate indifference towards the domestic violence suffered by Plaintiff Mara Nichole Kinoff while she was a student at Colorado School of Mines ("Mines").  Mrs. Kinoff enrolled at Mines during the fall of 2014 and was a member of the ROTC program.  *FAC* [# 21] ¶¶ 12.  Shortly thereafter, Mrs. Kinoff began a romantic relationship with another student, and fellow member of the ROTC program that unfortunately turned abusive.  *Id.* at ¶¶ 13-14.  This abuse culminated on January 24, 2015, when Mrs. Kinoff was slapped by her partner.  *Id.* at ¶¶ 15.   After fleeing from her partner, Mrs. Kinoff received several voicemails in which her partner threatened to commit suicide if she did not return to him.  *Id.*

Mrs. Kinoff promptly reported this domestic violence to her ROTC captain. *Id.* at ¶¶ 16.  The incident was also reported to the Mines Title IX office, which was headed by Defendant Karin Ranta-Curran.  *Id.* at ¶¶ 16-17, 26.  As the lead Title IX coordinator, Defendant Ranta-Curran had a legal duty to initiate an investigation into the domestic violence incident.  *Id.* at ¶¶ 30.  However, the Title IX report pertaining to Mrs. Kinoff's domestic violence was opened and closed on

---

[1] Plaintiff names Colorado School of Mines, Karin Ranta-Curran, and Doe Defendants 1-10 as defendants in the First Amended complaint. FAC [# 21] ¶¶ 3-5.  However, Defendant's Motion to Dismiss only addresses Plaintiff's allegations against Defendant Mines and Defendant Ranta-Curran.  Accordingly, for purposes of this present opposition, Plaintiff's arguments will be addressed towards Defendant Mines and Defendant Ranta-Curran.

the same day with no further response. *Id.* at ¶¶ 26. The domestic violence incident was never investigated and Mrs. Kinoff never received any support from the Mines Title IX office.

As a result of Defendant Ranta-Curran's deliberate indifference, Mrs. Kinoff suffered immense emotional and psychological turmoil over the next year. *Id.* at ¶¶ 19-24. The trauma from her domestic violence rendered Mrs. Kinoff unable to travel on campus by herself due to fear of encountering her attacker. *Id.* at ¶¶ 19. This trauma drove Mrs. Kinoff to drop out of the ROTC program and move out of her dorm. *Id.* at ¶¶ 21-22. As her mental state continued to deteriorate, Mrs. Kinoff developed severe anxiety and depression which prevented her undertaking basic life tasks and caused her normally outstanding grades to slip. *Id.* at ¶¶ 26. This ordeal eventually caused Mr. Kinoff to drop out of Mines entirely. *Id.* at ¶¶ 24.

Mrs. Kinoff did not know about the deliberate indifference of the Mines Title IX office until June 25, 2020. *Id.* at ¶¶ 26. On that date, Mrs. Kinoff sent an email to the Mines Title IX office in which she asked whether a Title IX report had ever been filed regarding the domestic violence she suffered while enrolled. *Id.* Only then was she informed that her Title IX report had been filed and closed on January 30, 2015. *Id.*

## II. LEGAL STANDARD

**A. Federal Rule of Civil Procedure 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), "[d]ismissal is appropriate only if the complaint, viewed in the light most favorable to plaintiff, lacks enough facts to state a claim to relief that is plausible on its face." United States ex rel. Conner v. Salina Regional Health Center, 543 F.3d 1211, 1217 (10th Cir. 2008) (quotations and citations omitted). When deciding a motion to dismiss under Rule 12(b)(6), the court accepts all of the plaintiffs' allegations as true, draws all reasonable inferences in the favor of the non-moving party and construes the pleading in a light most favorable to plaintiffs. See *Pirraglia v. Novell, Inc.*, 339 F.3d 1182, 1187 (10th Cir. 2003).

Although a plaintiff must provide "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action … [s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the … claim is and the grounds upon which it rests." Lane v. Simon, 495 F.3d 1182, 1186 (10th Cir. 2007) (quotations and citations omitted). A complaint "attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," but must simply allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). And, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B. Qualified Immunity

Qualified immunity shields government officials performing discretionary functions "[f]rom liability for civil damages insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). However, qualified immunity does not apply where an official violates a clearly established constitutional right, of which a reasonable person in their position would have known. *Frasier v. Evans*, 992 F.3d 1003, 1014 (10th Cir. 2021). In order for the law to be clearly established, "there must be a Supreme Court or other Tenth Circuit decision on point, or the clearly established weight of authority from other circuits must have found the law to be as the plaintiff maintains." *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992).

### III. ARGUMENT

### A. Statute of Limitations

Although the statute of limitations for Title IX and § 1983 claims are determined by a state's personal injury statute, the date of accrual for a federal

claim is governed by federal law. *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1212-13 (10th Cir. 2014); *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Pursuant to the "discovery rule", a federal claim is accrued, and the corresponding statute of limitations begin to run only when a Plaintiff knows or has reason to know of the facts necessary to establish their federal claim. *Baker v. Board of Regents*, 991 F.2d 628, 632 (10th Cir. 1993) . This rule applies to both Title IX and § 1983 claims. *Varnell*, 756 F.3d at 1217. Accordingly, while the statute of limitation for Mrs. Kinoff's claims is limited to two years under Colorado's personal injury statute, it did not begin running until June 25, 2020, the date that Mrs. Kinoff was made aware of Defendants' misconduct. *FAC* [# 21] ¶¶ 26; Colo. Rev. Stat. § 13-80-102.

    Mrs. Kinoff's claims are premised on the Defendants' deliberate indifference towards the domestic violence she suffered as manifested by the Defendants' choice to open and close Mrs. Kinoff's Title IX investigation on the same day. *FAC* [# 21] ¶¶ 26, 36. This action deprived Mrs. Kinoff of the investigation and support to which she was legally entitled. *Id.* ¶¶ 30. However, Mrs. Kinoff was wholly unaware of this action when it took place and would likely have never known about it had she not inquired into the matter on June 25, 2020. *Id.* ¶¶ 26. Accordingly, June 25, 2020, was the date that Mrs. Kinoff became aware of the facts necessary to establish her federal claims. *Varnell*, 756 F.3d at 1217; *Baker,*

991 F.2d at 632 .  For that reason, Mrs. Kinoff had until June 25, 2022, to file her complaint and she timely did so on September 30, 2021. See *Complaint* [#1]

    B. **Title IX**

There are four factors that a Plaintiff must allege in order to state a Title IX claim for damages against a Federally funded educational institution.[2]  A plaintiff must allege that the institution  (1) had actual knowledge of, and (2) was deliberately indifferent to (3) harassment that was so severe, pervasive and objectively offensive that it (4) deprived the victim of access to the educational benefits or opportunities provided by the institution. *Rost v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1119 (10th Cir. 2008);  *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1246 (10th Cir. 1999).  Mrs. Kinoff has adequately alleged each of these elements.

For purposes of a Title IX claim, an institution is deemed to have "actual knowledge" when a school official with "authority to take corrective action" is made aware of sex-based discrimination or harassment.  *Escue v. N. Okla. Coll.*, 450 F.3d 1146, 1153 (10th Cir. 2006); *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290-291 (1998).  As the lead Title IX coordinator, Defendant Ranta Curran was a school official imbued with the authority to take corrective action with respect sex-based discrimination. *FAC* [# 21] ¶¶ 35.  Indeed, in her capacity

---

[2] It is uncontested that Mines is a federally funded educational institution.

as the lead Title IX coordinator, Defendant Ranta-Curran had a legal duty to investigate the domestic violence once she became aware of it. *Id.* ¶¶ 30; 34 CFR 106.44. Defendant Ranta-Curran was plainly aware of the sex-based discrimination suffered by Mrs. Kinoff, given that that the Title IX office, under her direct supervision created a Title IX report pertaining to domestic violence perpetrated against Mrs. Kinoff. *Id.* ¶¶ 34-36. Plaintiff has therefore adequately pled "actual knowledge" with respect to Mines.

Defendant insinuates that Title IX liability does not attach to Mines because they lacked "substantial control" over the location where Mrs. Kinoff was assaulted. *MTD* [#23] pg. 8. However, this is incorrect. Title IX liability does not hinge on whether an institution has "substantial control" over a particular location, rather, liability attaches where an institution is in a position to "take remedial action" in response to a given incident of sex-based discrimination. *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 644 (1999). Here, Mrs. Kinoff and the perpetrator were both students at Mines, Mrs. Kinoff participated in ROTC with the perpetrator and Mrs. Kinoff lived on Mines's campus at the time of the incident. *FAC* [# 21] ¶¶ 12-14. Given these circumstances Mines was certainly in a position to provide redress for the domestic violence suffered by Mrs. Kinoff.

Deliberate indifference is adequately pled in a Title IX context when an institution's alleged response to harassment is "clearly unreasonable" with respect

to the known circumstances. *Davis*, 526 U.S. at 648-649. The Tenth Circuit Court of Appeals found "deliberate indifference" on the part of a school district when a High School principal allegedly refused to investigate claims of student-on-student sexual harassment that were brought to his attention. *Murrell,* 186 F.3d at 1248. The facts of this case are analogous to *Murrel*. Like the principal in *Murrel*, Defendant Ranta-Curran had direct knowledge of the sexual harassment (in this case domestic violence), and despite being in a position to meaningfully respond to it, she did not do so. Instead of initiating an investigation into the domestic violence suffered by Mrs. Kinoff or taking measures to ensure that Mrs. Kinoff felt safe on campus, Defendant Ranta-Curran perfunctorily created a Title IX report and did not follow up on it in any way. *FAC* [# 21] ¶¶ 34. This action was "clearly unreasonable", and for that reason, "deliberate indifference" has been adequately pled.

     Defendant attempts to contest the deliberate indifference element by flatly mischaracterizing Plaintiff's claims. The First Amended Complaint makes abundantly clear that Mrs. Kinoff's Title IX claim is premised on the failure of Mines's Title IX office to meaningfully investigate the domestic violence perpetrated against her and that Mines failed to provide her with any support in the aftermath of this domestic violence. *FAC* [# 21] ¶¶ 17-24, 36, 38-40. Yet Defendant falsely asserts that " Kinoff merely alleges that there were inaccuracies

contained in the Title IX report, she does not allege that Mines failed to undertake any action.". *MTD* [#23] pg. 10.  This assertion is plainly untrue and does not operate to negate Plaintiff's showing of deliberate indifference.

While the final two elements of a Title IX claim are heavily fact dependent, they can be satisfied with a showing that the harassment "had a concrete, negative effect on [a Plaintiff's] ability to receive an education". *Davis*, 526 U.S. at 653-654. Moreover, these elements have been satisfied with facts similar to the case at bar in *Farmer v. Kansas State Univ.*, 918 F.3d 1094 (10th Cir. 2019).  The plaintiffs in *Farmer* were two women who had been sexually assaulted by male classmates during off campus events. *Id*. At 1100-1101.  After trying and failing to receive recourse from their university, both women suffered from debilitating fear of encountering their attackers, resulting, among other things, in severe depression, the inability to travel on campus without friends, and  dramatically lower academic performance. *Id*.   Because the inaction of the University caused the Plaintiffs to suffer these conditions, the Court found that the University had rendered the Plaintiffs "vulnerable to harassment" thereby depriving them of educational opportunities.  *Id*. At 1104-1105. (Notably the Court found that "vulnerable to harassment" did not require an allegation of subsequent actual harassment).  Under these conditions, the Court found that the Plaintiffs had adequately alleged a Title IX claim against their University. *Id.*

Similar to the Plaintiffs in *Farmer,* Mrs. Kinoff was rendered "vulnerable to harassment" by the inactions of Mines.  Like *the* Farmer Plaintiffs, Mrs. Kinoff suffered severe sexual harassment at the hands of another student, and her university failed to respond the harassment after she brought it to their attention.  *FAC* [# 21] ¶¶ 15-16, 18.  In a further tragic parallel, the inactions of her university forced Mrs. Kinoff, like *the Farmer* plaintiffs, to live in constant fear of encountering her attacker resulting in debilitating mental suffering, the inability to travel on campus alone, and a dramatic reduction in academic performance.  *FAC* [# 21] ¶¶ 19, 22-24, 38-40.  For these reasons, Mrs. Kinoff has adequately alleged that Mines's inactions rendered her "vulnerable to harassment" thereby depriving her of her educational opportunities.  *Farmer*, 918 F.3d at 1104-1105.

Defendant attempts to demonstrate that Mrs. Kinoff's fear of encountering her attacker was not "objectively reasonable".  *MTD* [#23] pg. 8-10.  First, Defendant argues that because Mrs. Kinoff suffered domestic violence and not a sexual assault, her fear of encountering her attacker was not reasonable*. Id.* at pg. 9.  Ironically, Defendant cites to *Farmer* for this proposition*.  Id.*  While Mrs. Kinoff was not sexually assaulted, domestic violence is well understood to be a deeply traumatic experience, often leaving victims with profound feelings of fear towards their attacker.   Defendant's attempt to minimize the suffering of domestic

violence victims is not only incorrect but is insulting both to victims of domestic violence and sexual assault.

Second, Defendant argues that Mrs. Kinoff's fears were not reasonable because did not allege a sufficient likelihood that she would encounter her attacker "on a regular basis". *Id.* at pg. 10.  This contention is plainly false because Mrs. Kinoff and her attacker were both members of the ROTC program, where they would be in close contact.  *FAC* [# 21] ¶¶ 13, 16.  ROTC officers actively attempted to make Mrs. Kinoff come into contact with her attacker by forcing her to report for ROTC training.  *FAC* [# 21] ¶¶ 20-21.  In addition, *Farmer* did not require a showing of likelihood that the plaintiffs might encounter their attackers on campus.  *Farmer*, 918 F.3d at 1104-1105.  Rather, it was sufficient that their fears "forced them to take very specific actions that deprived them of the educational opportunities offered to other students.".  *Id.*  Similarly, Mrs. Kinoff's fears forced her to avoid traveling on campus alone and eventually influenced her to leave the University entirely.  *FAC* [# 21] ¶¶ 19-24.  Accordingly, Mrs. Kinoff's fears were objectively reasonable.

For the above reasons, Mr. Kinoff has adequately alleged a Title IX claim against Mines.

### C. Equal Protection

Mrs. Kinoff's equal protection claim is premised on Defendant Ranta Curran's deliberate indifference to the sexual harassment that Mrs. Kinoff suffered. *FAC* [# 21] ¶¶ 51, 56. A plaintiff may state a claim for an equal protection violation under § 1983 against a school official "upon a showing of deliberate indifference to known sexual harassment.". *Murrell,* 186 F.3d at 1250; see also *Jojola v. Chavez*, 55 F.3d 488 (10th Cir. 1995). Furthermore, and contrary to Defendant's suggestion, the 10th Circuit Court of Appeals has explicitly held that this type of § 1983 equal protection liability is "clearly established". *Murrell,* 186 F.3d at 1252. Accordingly, a school official who is alleged to have engaged in deliberate indifference towards third party sexual harassment against a plaintiff is not entitled to qualified immunity. *Id.* In fact, this Court has recognized precisely this sort of equal protection claim when a student alleged that a school principal (1) knew of and (2) acquiesced to the discriminatory conduct of another student." *Doe v. Roaring Fork Sch. Dist.*, 510 F. Supp. 3d 971, 977 (D. Colo. 2020) (School principal was not entitled to qualified immunity when plaintiff alleged that he was deliberately indifferent towards a sexual assault she suffered at the hands of another student).

With respect to Mrs. Kinoff's equal protection claim, the First Amended Complaint alleges precisely the elements that are required under *Murrel*, namely,

that Defendant Ranta-Curran (1) knew of the domestic violence suffered by Mrs. Kinoff and (2), that Defendant Ranta-Curran acted with deliberate indifference towards the domestic violence suffered by Mrs. Kinoff. *Murrell,* 186 F.3d at 1250; *FAC* [# 21] ¶¶ 51, 56. Mrs. Kinoff first alleges that Defendant Ranta Curran was aware of the domestic violence, as evidenced by the existence of the Title IX report. *FAC* [# 21] ¶¶ 50. Next, Mrs. Kinoff alleges, that despite knowing about the domestic violence, Defendant Ranta-Curran failed to investigate it or undertake any affirmative actions to ensure that Mrs. Kinoff felt safe on Mines's campus. *FAC* [# 21] ¶¶ 51. As a result of Defendant Ranta-Curran's deliberate indifference, Mrs. Kinoff suffered immense emotional and psychological harm. *FAC* [# 21] ¶¶ 53-54. Because the First Amended Complaint contains the equal protection elements required under *Murrel*, Plaintiff has adequately alleged an equal protection claim. *Murrell,* 186 F.3d at 1250

   **D. Substantive Due Process**

   To state a § 1983 claim for a violation of substantive due process, under a danger creation theory, a plaintiff must allege six elements. A plaintiff must allege that: "(1) the state entity and individual actors created the danger or increased the plaintiff's vulnerability to the danger; (2) plaintiff was a member of a limited and specifically definable group; (3) defendant's conduct put plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious and known;

(5) defendants acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, shocks the conscience. *Rost*, 511 F.3d at 1126. Plaintiff has adequately alleged these six elements.

With respect to elements one and three, the actions of Defendant Ranta-Curran affirmatively put Mrs. Kinoff in increased danger.[3] Given that Defendant-Ranta Curran had knowledge of the domestic violence suffered by Mrs. Kinoff, her failure to investigate or provide support was not mere negligence, but was a *conscious* decision, and therefore an affirmative act. *FAC* [# 21] ¶¶ 64. *Currier v. Doran*, 242 F.3d 905, 919-20 (10th Cir. 2001) (Social worker failed to investigate an abusive home and recommended their custody over a child). Furthermore, the act of closing Mrs. Kinoff's Title IX case on the same day it was opened was certainly an affirmative action. *Id.*

A Defendant can be found responsible for putting a Plaintiff increased danger where a Defendant knows of a pre-existing danger or threat and causes the Plaintiff to be exposed to it. *Currier*, 242 F.3d at 919-20 (Social worker exposing children to known domestic abuser); *Armijo v. Wagon Mound Pub. Schs*, 159 F.3d 1253, 1264 (10th Cir. 1998) (School officials exposing a suicidal student to a home with firearms). In the present case Defendant Ranta-Curran's was aware that Mrs.

---

[3] Defendant does not contest element two, that Mrs. Kinoff is a member of a limited and specifically definable group, namely, women that have suffered domestic violence while attending a public university. FAC [# 21] ¶¶ 67.

Kinoff had been domestically abused and left her unprotected and exposed to her abuser. *FAC* [# 21] ¶¶ 65-66, 68. Defendant Ranta-Curran's actions thereby increased Mrs. Kinoff's chance of physical danger.

With respect to element four, Defendant is incorrect when they state that "there is no allegation that Ranta-Curran had first-hand knowledge of the alleged abuse or how she obtained that knowledge". *MTD* [#23] pg. 14. The First Amended Complaint makes clear that Mrs. Kinoff reported her abuse to her ROTC Captain, and that the Mines Title IX office made a report of it. *FAC* [# 21] ¶¶ 16, 63. Given that Defendant Ranta-Curran was serving as the lead Title IX coordinator for Mines at that time, it is difficult to imagine that she would not have been aware of this report. *FAC* [# 21] ¶¶ 4, 16, 61. Plaintiff has thus demonstrated that Defendant Ranta-Curran had firsthand knowledge of the abuse suffered by Mrs. Kinoff and that Defendant Ranta-Curran was aware of the risk of physical danger that she exposed Mrs. Kinoff to by failing to respond to the abuse. Element five is thus satisfied because Defendant Ranta-Curran, consciously disregarded the known risk associated with leaving Mrs. Kinoff unprotected against her abuser by failing to respond to the abuse. *FAC* [# 21] ¶¶ 68-69.

With respect to element six, Defendant Ranta Curran's conduct was "conscious shocking". The Tenth Circuit Court of Appeals has noted that hallmark cases of "conscious shocking" behavior are those in which an official "was aware

of a known or obvious risk that was so great that it was highly probable that serious harm would follow and he or she proceeded in conscious and unreasonable disregard of the consequences.". *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995)(*quoting Medina v. City & Cty. of Denver*, 960 F.2d 1493, 1496 (10th Cir. 1992). "Conscious shocking" behavior is also associated with an elevated level of outrageousness. *Uhlrig*, 64 F.3d at 574. As mentioned above, Defendant Ranta-Curran, was aware that Mrs. Kinoff had suffered domestic abuse and consciously disregarded the known risk associated with leaving Mrs. Kinoff unprotected against her abuser. *FAC* [# 21] ¶¶ 68-69. Given the obvious nature of the risk, this level of flagrant disregard for danger certainly rises to the level of being outrageous. *Currier*, 242 F.3d at 919-20 (Exposing children to known domestic abuser was "conscious shocking"); *Armijo*, 159 F.3d at 1264 (School officials exposing a suicidal student to a home with firearms was "conscious shocking").

A constitutional violation is "clearly established" when the unlawfulness of official's behavior was reasonably apparent to them "in light of pre-existing law". *Woodward v. Worland*, 977 F.2d 1392, 1398 (10th Cir. 1992) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987)). This standard does not require a previous case to recognize the constitutional violation under the exact same set of facts as the case at bar. *Murrell,* 186 F.3d at 1251. Rather, what is controlling is whether, a "reasonable application of the prevailing law" would demonstrate that

an official violated a constitutional right of which reasonable person in their position would have known. *Id.*

In the Tenth Circuit, it is clearly established that a school official can be subject to danger creation liability when they ignore a known risk to a student and directly expose the student to that risk. *Armijo*, 159 F.3d at 1264 (Exposing a suicidal student to a home known to contain firearms). Defendant Ranta-Curran, a school official, undertook this same action when she consciously disregarded the known risk associated with leaving Mrs. Kinoff unprotected against her abuser. *FAC* [# 21] ¶¶ 68-69. Thus, a "reasonable application of the prevailing law" shows that danger-creation liability is "clearly established" in this case. *Murrell,* 186 F.3d at 1251.

## IV. CONCLUSION

For the reasons stated herein, Plaintiff respectfully request that this Court deny Defendant's Motion to Dismiss First Amended Complaint.

DATED this 28th day of April, 2022.

> Keith Altman, Esq.
> By: */s/ Keith Altman*
> The Law Office of Keith Altman
> 33228 West 12 Mile Road, Suite 375
> Farmington Hills, Michigan 48334
> Telephone: (248) 987-8929
> keithaltman@kaltmanlaw.com
>
> Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I certify that I served the foregoing **Motion to Dismiss First Amended Complaint** upon all parties herein by filing copies of same using the ECF System, this 28th day of April 2022 addressed as follows:

SKIPPERE SPEAR, No. 32601
Senior Assistant Attorney General
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 6th Floor
Denver, CO 80203
(720) 508-6140
skip.spear@coag.gov

*/s/ Keith Altman*