IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02657-RMR-KLM

MARA NICHOLE KINOFF,

    Plaintiff,

v.

COLORADO SCHOOL OF MINES BOARD OF TRUSTEES, et al.,

    Defendants.

**REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**

    The Board of Trustees of the Colorado School of Mines and Karin Ranta-Curran, by and through the Colorado Attorney General, hereby submit this reply in support of their motion to dismiss Mara Kinoff's first amended complaint [#23].

**STATUTE OF LIMITATIONS**

    Once defendants satisfy their initial burden to show that a claim is untimely, the burden shifts to the plaintiff to establish a factual basis for tolling the statute of limitations. *See Escobar v. Reid*, 668 F. Supp. 2d 1260, 1287 (D. Colo. 2009) (citing *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980) (holding that, on motions to dismiss asserting the statute of limitations affirmative defense, "when the dates given in the complaint make clear that the right sued upon has been extinguished, the plaintiff has the burden of establishing a factual basis for tolling the statute"). The domestic abuse underlying the claims at issue occurred on January 24, 2015, but Kinoff argues that her claims did not accrue until June 25, 2020, pursuant to the "discovery rule." *Resp. Mot. Dismiss* [#29] at p. 6. Kinoff has not established a factual basis for tolling the statute of limitations.

1

The discovery rule "delays accrual of a claim until the plaintiff knew or should have known the facts necessary to establish her cause of action, such as the fact that a surgeon left a sponge in the plaintiff's abdomen after an operation." *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1216 (10th Cir. 2014) (citing *Alexander v. Okla.,* 382 F.3d 1206, 1215 (10th Cir.2004). In *Alexander,* the Tenth Circuit Court of Appeals said that a claim accrues under the discovery rule "when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action," and more specifically that a civil rights action accrues "when facts that would support a cause of action are or should be apparent." *Id.* at 1215 (citation and quotation marks omitted). A plaintiff "need not have conclusive evidence of the cause of an injury in order to trigger the statute of limitations." *Id.* at 1216. "Rather, we focus on whether the plaintiff knew of facts that would put a reasonable person on notice that wrongful conduct caused the harm." *Id.* In this regard, "a plaintiff must use reasonable diligence in seeking to discover the facts giving rise to a claim for relief." *Id.*

Kinoff alleges that she was slapped by her romantic partner on January 24, 2015. *1st Am. Compl.* [# 21] at ¶ 16. Because the Defendants allegedly failed to take any steps to protect Kinoff, she "was forced to live in constant fear of encountering on CSM campus, the individual who had perpetrated domestic violence against her." *Id.* at ¶ 38. "This constant fear took a serious toll on Mrs. Kinoff's mental health and caused her develop debilitating anxiety and depression which in turn caused severe and pervasive disruptions to Mrs. Kinoff's education at CSM …." *Id.* at ¶ 39. By August of 2015, Kinoff moved off the Mines campus "because she no longer felt save living in her dorm room." *Id.* at ¶ 22. And by January of 2016, Kinoff's "deteriorating mental state prevented her from undertaking basic tasks. Her grades slipped to the

2

point that she was placed on academic probation." *Id.* at ¶ 23. In May 2016, Kinoff withdrew from Mines to focus on her mental health. *Id.* at ¶ 24.

Kinoff knew of her injury and that the Defendants were, allegedly, doing nothing to protect her in January of 2015. But Kinoff waited until the end of June 2020 to investigate the Defendants actions. Kinoff then waited until October 2021 to file her lawsuit. Waiting for five-years to investigate her claims does not constitute reasonable diligence and Kinoff may not now rely on the discovery rule to toll the statute of limitations.

## TITLE IX

Kinoff has still not identified her romantic partner or the location where she was abused. Instead, Kinoff asserts that the location of harassment is irrelevant so long as Mines exercised some control over her romantic partner who was purportedly a student. But the Supreme Court has expressly stated that Title IX liability only attaches where a university "exercises substantial control over *both* the harasser *and* the context in which the known harassment occurs." *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 645 (1999) (emphasis added); *see also* 34 C.F.R. § 106.44 (defining "education program or activity" to include "locations, events, or circumstances over which the recipient exercised substantial control over *both* the respondent *and* the context in which the sexual harassment occurs") (emphasis added). Control over the harasser and the context in which the harassment occurs are two separate requirements and "a Title IX claim fails where the educational institution has substantial control over the harasser but no control over the context where the harassment occurred." *Brown v. State*, 23 F.4th 1173, 1183-84 (9th Cir. 2022).

3

The issue in *Brown* "was whether the second control-over-context requirement is met" where a plaintiff seeks to hold a university "liable for physical abuse that she suffered at the hands of her former boyfriend and fellow University student at his off-campus residence." *Id.* at 1175. In analyzing this issue, the Ninth Circuit found that the "control-over-context requirement arises from the limitation that Title IX addresses discrimination occurring only under an 'education program or activity receiving Federal financial assistance.'" *Id.* at 1181 (quoting 20 U.S.C. § 1681(a)). "That a person subject to an educational institution's rules or authority engages in misconduct does not necessarily mean that his misconduct occurs *under* that institution's education program. Stated another way, not everything that a person subject to a school's disciplinary control does can be attributed to the school's operations. This is particularly true of student conduct." *Id*. Kinoff asks the Court to blur the line between the two control tests set forth in *Davis*, but "[c]onflating the control-over-context requirement into the control-over-harasser requirement expands Title IX's implied private right of action beyond what Title IX can bear." *Brown*, 23 F.4th at 1184; *see also Weckhorst v. Kansas State Univ.*, 241 F. Supp. 3d 1154, 1167 (D. Kan. 2017) (collecting cases from other circuits holding that a college or university lacked substantial control over private off-campus residences for purposes of Title IX), *aff'd sub nom. Farmer v. Kansas State Univ.*, 918 F.3d 1094 (10th Cir. 2019). Because Kinoff does not allege the context in which her romantic partner's harassment occurred, she fails to state a Title IX claim.

Similarly, the Supreme Court has expressly stated that Title IX requires a plaintiff to establish harassment having a "systemic effect" of denying equal access to an education and that a "single instance" of harassment is unlikely to satisfy this requirement. *Davis*,

4

526 U.S. at 652. To meet this requirement, Kinoff attempts to shoehorn her allegations into the facts at issue in *Farmer*, where two students were raped by multiple other students at fraternity events that were subject to the control of the University. 918 F.3d at 1105; *Weckhorst*, 241 F. Supp. 3d at 1167. But the multiple rapes at issue in *Farmer* are not the same as the slap alleged by Kinoff, which did not occur at an event under the control of Mines. Further, the victims in *Farmer* asserted "quite specific" allegations regarding the effect of the rapes on their education and "allege more than a general fear of running into their assailants. They allege that their fears have forced them to take very specific actions that deprived them of the educational opportunities offered to other students." 918 F.3d at 1105. Kinoffs' allegations are not similar to those in *Farmer*, and she has failed to adequately allege harassment that had a systemic effect of denying her access to an education.

## EQUAL PROTECTION

Defendant Ranta-Curran withdraws her Rule 12(b)(6) assertion of qualified immunity from the Equal Protection claim brought by Kinoff. Ranta-Curran reserves the right to re-assert qualified immunity at later stages of these proceedings. Ranta-Curran continues to assert that the Equal Protection claim is barred by the statute of limitations.

## SUBSTANTIVE DUE PROCESS

"A state is not required to provide its citizens with 'particular protective services' under the Due Process Clause, and 'failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.'" *Armijo by and through Chavez v. Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1261 (10th Cir. 1998) (*quoting DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.,* 489 U.S. 189, 197 (1989)). In order to evade this general rule under the danger creation exception, Kinoff "must show that the charged state entity and the charged

5

individual defendant actors created the danger or increased the plaintiff's vulnerability to the danger in some way." *Id.* at 1263. "In other words, if the danger to the plaintiff existed prior to the state's intervention, then even if the state put the plaintiff back in that same danger, the state would not be liable because it could not have created a danger that already existed." *Id.* Ranta-Curran did not create the danger faced by Kinoff, domestic abuse, her romantic partner did.

The cases cited by Kinoff do not counsel a different result. In *Armijo*, a special education student with depression was removed from a public school after making suicidal statements. School officials drove the student to his house, despite knowing that (1) the student had access to firearms in the home and (2) the student's parents were not at the home. The officials did not inform the student's parents that he was being sent home, which was contrary to school policy. Unsupervised, the student accessed the available firearms and committed suicide. *Id.* at 1264. In *Currier*, social workers removed a child from the custody of his mother and then placed the child in the custody of his father, despite failing to investigate numerous allegations of abuse against the father and bruises on the child. The child subsequently died as a result of the father's abuse. *Currier v. Doran*, 242 F.3d 905, 919-920 (10th Cir. 2001). In both *Armijo* and *Currier*, state actors physically placed children into an environment knowing that a danger could exist. These cases do not clearly establish a constitutional violation in this case. Ranta-Curran did not physically place Kinoff anywhere, let alone into the custody of her romantic partner. And Kinoff has still not disclosed the identity of her romantic partner or where the abuse occurred—dispelling any notion that the Board or Ranta-Curran had sufficient knowledge of any danger. According to Kinoff's allegations, Ranta-Curran only maintained the status quo.

## CONCLUSION

For the reasons stated herein, Defendants respectfully request the Court dismiss Kinoff's claims with prejudice.

DATED this 26th day of May, 2022.

PHILIP J. WEISER
Attorney General

*/s/ Skip Spear*
SKIPPERE SPEAR, No. 32601*
Senior Assistant Attorney General
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 6th Floor
Denver, CO 80203
(720) 508-6140
skip.spear@coag.gov

ATTORNEY FOR DEFENDANTS
*counsel of record

## CERTIFICATE OF SERVICE

I certify that I served the foregoing **Reply in Support of Motion to Dismiss First Amended Complaint** upon all parties herein by filing copies of same using the ECF System, this 26th day of May, 2022 addressed as follows:

Keith Altman
The Law Office of Keith Altman
33228 West 12 Mile Rd, Ste 375
Farmington Hills, MI 48334
keithaltman@kaltmanlaw.com
*Attorney for Plaintiff*

                                                  */s/ Jennifer Davis-Weiser*