IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  21-cv-02657-RMR-KLM

MARA NICHOLE KINOFF,

　　　Plaintiff,

v.

COLORADO SCHOOL OF MINES BOARD OF TRUSTEES, in its official capacity,
KARIN RANTA-CURRAN, in her individual capacity, and
DOES 1-10, whose true names are unknown,

　　　Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

　　　This matter is before the Court on Defendants Colorado School of Mines Board of Trustees ("Mines") and Karin Ranta-Curran's ("Ranta-Curran") **Motion to Dismiss** [#23] (the "Motion").  Mara Nichole Kinoff ("Plaintiff") filed a Response [#29], and Defendants filed a Reply [#35].  Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1(c), the Motion [#23] has been referred to the undersigned for a recommendation regarding disposition.  *See* [#27].  The Court has reviewed the Motion [#23], the Response [#29], the Reply [#35], the entire case file, and the applicable law, and is sufficiently advised in the premises.  For the reasons set forth below, the Court **RECOMMENDS** that the Motion [#23] be **GRANTED**.

## I. Background[1]

Plaintiff brings this suit asserting a violation of Title IX, an equal protection claim, and a substantive due process claim. *See First Am. Compl* ("FAC") [#21] at 6-18. The FAC seeks damages and unspecified injunctive relief. *Id.* at 18.

Mines is a state entity that is subject to the control of Defendant Board of Trustees (the Board). *FAC* [#21] ¶ 3; *see also* Colo. Rev. Stat. §§ 23-41-101, *et seq.* (statutorily creating Mines and the Board). Plaintiff was enrolled as a student with Mines from the Fall of 2014 to the Spring of 2016. *Id.* ¶ 2. Defendant Ranta-Curran was employed by Mines at all times relevant to this action as the lead Title IX coordinator. *Id.* ¶ 4. On information and belief, the Doe Defendants were employed by Mines and worked in the Title IX office or were otherwise involved in Plaintiff's Title IX action. *Id.* ¶ 5.

Plaintiff enrolled at Mines in the fall of 2014 as a scholarship student with the Army Reserve Officers' Training Corps ("ROTC") program. *FAC* [#21] ¶ 12. The Army ROTC is a part of the United States government, 10 U.S.C. § 2101, *et seq.*, and Mines must host Army ROTC to be eligible for federal funding. 10 U.S.C. § 983.[2]

In November 2014, Plaintiff began a romantic relationship with another, unidentified member of the ROTC program ("Student"). *FAC* [#21] ¶ 13. Shortly after the relationship began, Student exhibited abusive behavior toward Plaintiff. *Id.* ¶ 14. Student "acted in a controlling manner" and "physically assaulted [Plaintiff] on several occasions." *Id.* Plaintiff specifies that this culminated in an incident in which Student assaulted her,

---

[1] All well-pled facts from the FAC [#21] are accepted as true and viewed in the light most favorable to Plaintiff as the nonmovant. *Barnes v. Harris*, 783 F.3d 1185, 1191-92 (10th Cir. 2015).

[2] While Plaintiff refers to the program as "the CSM ROTC program," Defendants have clarified that, by statute, it is the Army ROTC program. The Court is not bound by allegations that are contrary to law.

slapping Plaintiff with enough force to knock the wind out of her.  *Id.* ¶ 15.  This incident occurred on January 24, 2015.  *Id.* ¶ 15.  Later that night, Student left multiple voicemails on Plaintiff's phone threatening to commit suicide if she did not return to him.  *Id.*  Plaintiff alleges that the incident left her in a "state of emotional turmoil, causing her to have multiple panic attacks throughout the night."  *Id.*[3]

On an unspecified date thereafter, Plaintiff reported the incident to an unidentified ROTC Captain because she "did not feel safe reporting for training where Student would be present."  *FAC* [#21] ¶ 16.[4]  There are no allegations that Plaintiff informed a Mines employee or anyone at the Title IX office, or the police, about the incident or the assaultive conduct of Student.  However, Plaintiff alleges that  Mines had actual knowledge of the gender-based violence against her based on the following: (1) an employee of Mines visited her in late January 2015 with instructions on how to schedule a counseling appointment, which is allegedly the only support she received from Mines about the violence; (2) when Plaintiff inquired some years later, on June 25, 2020, about whether a Title IX report had been filed, she was told that a "Title IX report" had been both opened and closed on January 30, 2015.  *Id.* at ¶¶ 17, 26, 34.  At the time, Ranta-Curran was the lead Title IX Coordinator at Mines.  *Id.* ¶ 16.[5]  Plaintiff asserts as to the latter incident that

---

[3]  Throughout the relationship, Plaintiff was seventeen years old and thus a minor.  *Id.* ¶¶ 12, 14.

[4]  Defendants highlight that ROTC cadre are active-duty members of the United States Army and federal employees.  *Motion* [#23] at 2 (citing 10 U.S.C. § 2111).  Active-duty Army personnel are generally prohibited from accepting concurrent State employment, 10 U.S.C. § 973(b)(3) (see Motion [#23] at 2), and there is no allegation in the FAC [#21] that the Captain was a Mines employee.

[5]  According to Plaintiff, the Title IX Report contained significant inaccuracies such as failing to note that she was a minor, and inaccurately stating that the relationship was between a student and nonstudent and that Plaintiff had received academic support.  *Id.* ¶ 28.

this is the first time that she discovered the Title IX report, and that no employee from the Title IX office at Mines contacted Plaintiff while she was enrolled as a student regarding a Title IX report or as to whether a police report had been filed.  *Id.* ¶¶ 18, 27.  Plaintiff does not explain why she did not reach out to anyone in the Title IX office prior to 2020.

Plaintiff alleges that due to her fear of Student, she no longer felt safe at Mines after the January 2015 incident.  *FAC* [#21] ¶ 19.  Because of her fear and anxiety, Plaintiff was "unable to travel to and from her classes unless she was in a large group."  *Id.*  In February 2015, two unidentified ROTC program officers ordered Plaintiff to report for training even though Student would be present in the same building.  *Id.* ¶ 20.  There are no allegations that Mines or its employees knew of these orders or that Mines has the authority to interfere with the United States Army.  There are also no allegations indicating that Plaintiff followed up on her previous report to her ROTC Captain after receiving this order.

In March 2015, Plaintiff dropped out of the ROTC program because she felt "unsafe and unsupported."  *FAC* [#21] ¶ 21.  In August 2015, Plaintiff moved off-campus because she "no longer felt safe.  *Id.* ¶ 22.  By January 2016, Plaintiff developed deep depression and worsening anxiety.  *Id.* ¶ 23.  Because of Plaintiff's deteriorating mental state, she could not perform basic tasks and "her grades slipped to the point that she was placed on academic probation."  *Id.*  In May 2016, Plaintiff withdrew from Mines.  *Id.* ¶ 24.  Student never faced disciplinary charges and graduated from Mines in 2016.  *Id.* ¶ 25.

Plaintiff alleges that as the lead Title IX coordinator, Defendant Ranta-Curran had a legal duty to initiate an investigation into the domestic violence incident.  *FAC*. [#21] at ¶ 30.  The domestic violence incident was never meaningfully investigated, and Mines,

through Ranta-Curran and the Doe Defendants, failed to undertake action to ensure Plaintiff felt safe on campus. *Id.* ¶ 36.

On September 30, 2021, Plaintiff commenced this action. Defendants contend that Plaintiff's claims should be dismissed under Fed. R. Civ. P. 12(b)(6) because: (1) the statute of limitations bars Plaintiff's claims; (2) Plaintiff has not sufficiently alleged facts that attach Title IX liability or otherwise "adequately allege harassment that had a systemic effect of denying her access to an education" and (3) Plaintiff fails to sufficiently allege application of the danger creation theory to support a substantive due process claim. *See, e.g., Motion* [#23].[6]

## II. Standard of Review

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted."). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 17 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted). To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim for relief

---

[6] While Defendants also initially argued that the equal protection claim should be dismissed on the merits and Ranta-Curran should receive qualified immunity, it appears they withdraw those arguments in the Reply [#32]. *See id.* at 5. Defendants continued to maintain, however, that all claims, including the equal protection claim, are barred by the statute of limitations. *Id.*

that is plausible on its face.'"  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of*

*Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient

facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to

support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A pleading that offers labels and

conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor

does a complaint suffice if it tenders naked assertion[s] devoid of further factual

enforcement."  *Id.* (brackets in original; internal quotation marks omitted).

"Dismissing a claim under Rule 12(b)(6) on the basis of an affirmative defense is

only proper where that defense is clear from the face of the complaint."  *Martinez v. City*

*& Cnty. of Denver*, No. 08-cv-01503-PAB-MJW, 2010 WL 1380529, at *3 (D. Colo. Mar.

31, 2010).  "Rule 12(b)(6) is a proper vehicle for dismissing a complaint that, on its face,

indicates the existence of an affirmative defense such as noncompliance with the

limitations period."  *See Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1310 n.3 (10th

Cir. 1999), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536

U.S. 101 (2002); *see also Cosgrove v. Kan. Dep't of Soc. & Rehab. Servs.*, 332 F. App'x

463, 467 (10th Cir. 2009) (unpublished) ("[T]he statute of limitations is an affirmative

defense, and to dismiss a claim pursuant to Rule 12(b)(6) on this basis it must be clear

from the face of the complaint that the claims are time-barred.").

## III.  Analysis

**A.**    **Statute of Limitations**

Defendants first argue that the claims against them should be dismissed because they were filed outside the applicable statute of limitations.  *Motion* [#23] at 7.   According to Defendants, the two-year statute of limitations began running either on January 24, 2015, the last day that Plaintiff suffered from Student's abuse, or in May 2016, when Plaintiff left Mines due to Defendants' failure to protect her.  *Motion* [#23] at 7.  Since suit was not filed until September 30, 2021, Defendant argues that the case is time-barred. Plaintiff argues, on the other hand, that the case is not barred because the statute of limitations did not begin running until June 25, 2020, when Plaintiff was informed by the current Title IX coordinator that her Title IX report had been opened and closed on the same day in January 2015.  *Response* [#29] at 6.  The Court first examines the applicable statute of limitations, then determines when the cause of action accrued.

Actions brought pursuant to Title IX and 42 U.S.C. § 1983 are subject to the general personal injury limitation period of the state in which the action arose.  *Hunt v. Bennett*, 17 F.3d 1263, 1265 (10th Cir. 1994).  In Colorado, the limitation on a personal injury claim brought pursuant to Title IX and § 1983 is two years.   *See* Colo. Rev. Stat. § 13-80-102(1)(g) (creating a two-year limitation period for "[a]ll actions upon liability created by a federal statute where no period of limitation is provided in said federal statute" and for "[a]ll other actions of every kind for which no other period of limitation is provided"); *Blake v. Dickason*, 997 F.2d 749, 750 (10th Cir. 1993) (applying Colo. Rev. Stat. § 13-80-102 to a § 1983 claim).  Accordingly, a two-year statute of limitations applies in this case under Colorado law.

However, federal law rather than state law determines when a cause of action accrues. *See Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 968 (10th Cir. 1994). Pursuant to federal law, "[t]he statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." *Id.* at 969. That is, "[a] civil rights action accrues when facts that would support a cause of action are or should be apparent." *Fratus v. Deland*, 49 F.3d 673, 675 (10th Cir. 1995) (citations omitted); *see also Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1216 (10th Cir. 2014) (holding that "'accrual occurs when the plaintiff has a complete and present cause of action, that is when the plaintiff can file suit and obtain relief.'") (quotation omitted).

Here, Plaintiff explains that her claims are premised on Defendants' deliberate indifference towards the domestic violence she suffered as manifested by Defendants' choice to open and close her Title IX investigation on the same day. *Response* [#29] at 6; *see also FAC* [# 21] ¶¶ 26, 36. This action allegedly deprived Plaintiff of the investigation and support to which she was legally entitled. *Id.; FAC* [#21] ¶ 30. Plaintiff asserts that she "was wholly unaware of this action when it took place and would likely have never known about it had she not inquired into the matter on June 25, 2020." *Id.; Am. Compl.* [#21] ¶ 26. Accordingly, Plaintiff argues that June 25, 2020, was the date when she became aware of the facts necessary to establish her federal claims, and that she had until June 25, 2022, to file her complaint. *Response* [#29] at 6-7. Since she filed the action on September 30, 2021, Plaintiff argues that it was timely. *Id.*

Plaintiff's argument hinges on the discovery rule, which "delays accrual of a claim until the plaintiff knew or should have known the facts necessary to establish her cause

- 8 -

of action." *Varnell*, 756 F.3d at 1216 (noting, for example, that accrual of the cause of action against a surgeon is delayed until the plaintiff discovers that a sponge was left in the plaintiff's abdomen after an operation) (citing *Alexander v. Oklahoma*, 382 F.3d 1206, 1215 (10th Cir. 2004)).  Under the discovery rule, it is not necessary that Plaintiff have "conclusive evidence of the cause of an injury in order to trigger the statute of limitations." *Alexander*, 382 F.3d at 1216.  In other words, "'the cause of action accrues even though the full extent of the injury is not then known or predictable.'" *Varnell*, 756 F.3d at 1216 (quotation and internal quotation marks omitted).  "[T]he focus is "whether the plaintiff knew of facts that would put a reasonable person on notice that wrongful conduct caused the harm." *Alexander*, 382 F.3d at 1216.  "In this context, a plaintiff must use reasonable diligence in seeking to discover facts giving rise to a claim for relief." *Id.*

Here, the Court rejects Plaintiff's argument that the limitations period began running on June 25, 2022, which is the date Plaintiff argues that she " became aware of the facts necessary to establish her federal claims." *Response* [#29] at 6.  The Court finds instead that the facts that would support a federal cause of action were or should have been apparent at least by the date when Plaintiff withdrew from Mines in May 2016.  *See Fratus*, 49 F.3d at 675 ("A civil rights action accrues when 'facts that would support a cause of action are or should be apparent.'") (quotation omitted).  Plaintiff alleges numerous situations in which she lived in fear of encountering Student on campus between late January 2015 and May 2016.  Plaintiff was further aware during the time she was enrolled at Mines that "Student never faced disciplinary consequences and graduated from [Mines] in 2016." *FAC* [#21] ¶ 25.  Finally, and most importantly, Plaintiff was aware that no one from Mines had reached out to her to discuss her Title IX

investigation or report, or provide support in keeping her safe.  It is apparent from these facts that Plaintiff knew or should have known of a claim against Mines and its employees during the time she was at Mines, but chose to do nothing.  Instead of attempting to diligently discover the relevant facts about Mines' investigation (or lack thereof) of the assaults against Plaintiff, Plaintiff chose not to do so and to sit on her rights for years with no explanation.   Plaintiff's argument that she likely never would have known about the injury had she not reached out to the Title IX office in June 2020 is thus not dispositive, as Plaintiff had a duty to exercise reasonable diligence in connection with her claim.  From the foregoing, the Court finds that the claims are barred by the two-year statute of limitations, which began at the latest when Plaintiff left Mines in 2016.  Were it otherwise, explained the Supreme Court, "'the statute would begin to run only after a plaintiff became satisfied that [s]he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief.'"  *Varnell*, 756 F.3d at 1216 (quoting *Wallace v. Kato*, 549 U.S. 384, 391 (2007)).

Based on the foregoing, the Court recommends that the Motion [#23] be **granted** as to all claims because they are time-barred.  Even if the claims were not barred by the statute of limitations, the Court finds that Plaintiff has failed to state plausible Title IX and substantive due process claims, as discussed below.

**B.     The Merits of the Title IX Claim**

Title IX does not explicitly provide a private remedy; therefore, courts have provided an implied private right of action for monetary damages.  *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 280, 284 (1998). But "Title IX narrowly circumscribes the set of parties whose known acts of sexual harassment can trigger some

duty to respond on the part of" a university. *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999).  Thus, a university's liability is limited "to circumstances wherein the recipient exercises substantial control over both the harasser and the context in which the known harassment occurs." *Id.* at 645; *see also* 34 C.F.R. § 106.44 (defining "education program or activity" to include "locations, events, or circumstances over which the recipient exercised substantial control over *both* the respondent *and* the context in which the sexual harassment occurs") (emphasis added).

Control over the harasser and the context in which the harassment occurs are two separate requirements, and "a Title IX claim fails where the educational institution has substantial control over the harasser but no control over the context where the harassment occurred." *Brown v. State*, 23 F.4th 1173, 1183-84 (9th Cir. 2022) (dismissing claim where the plaintiff attempted to hold a university "liable for physical abuse that she suffered at the hands of her former boyfriend and fellow University student at his off-campus residence[,]" as the "control-over-context requirement arises from the limitation that Title IX addresses discrimination occurring only under an 'education program or activity receiving Federal financial assistance.'" *Id.* at 1181 (quoting 20 U.S.C. § 1681(a)).  Plaintiff does not identify any of the locations where Student assaulted her, either in the FAC [#21] or her Response [#29], and does not allege that Mines had substantial control over that location.  Accordingly, the Court recommends that the Motion [#23] also be **granted** as to the merits of this claim.[7]

---

[7]  Because the Court concludes that dismissal is warranted on this basis, it does not rely on Defendants' other arguments as to why dismissal of this claim is proper.  The Court notes, however, that a fair reading of the FAC raises the issue of whether Plaintiff's allegations as to Student show that "the behavior is so severe, pervasive, and objectively offensive that it denies [Plaintiff] the equal access to education that Title IX is designed to protect."  *Davis ex rel.*

**C.     The Substantive Due Process Claim**

Finally, Plaintiff has alleged that through their acts and omissions, Defendant Ranta-Curran and Doe Defendants violated Plaintiff's clearly established fundamental constitutional right to be free of a state official's creation of danger.    *FAC.* [#21] ¶ 60. Thus, Plaintiff alleges that the individual Defendants had "actual knowledge" of the domestic sex-based violence perpetrated by Student against Plaintiff, were aware that they had a duty under Title IX to investigate this, and they "opened and closed Mrs. Kinoff's Title IX investigation on the same day thereby failing to initiate any meaningful Title IX investigation into Mrs. Kinoff's domestic violence allegation and closing off the possibility of providing Mrs. Kinoff with support." *Id.* ¶¶ 63-64.  According to Plaintiff, "[b]ecause Defendants were aware that Student was accused of previously perpetrating domestic violence against Mrs. Kinoff, it was readily foreseeable to Defendants that he would continue to pose a danger to Mrs. Kinoff if she was not provided with protection or support to curtail that danger.  Defendants' actions therefore placed Mrs. Kinoff in a substantial risk of serious, immediate, and proximate harm." *Id.* ¶ 66.  "By acting with deliberate indifference in failing to meaningfully address the domestic violence uffered by Mrs. Kinoff," Plaintiff alleges that the actions of Ranta-Curran and Doe Defendants' "was conscience shocking " *Id.* at 18 ¶ 72.

Turning to the analysis, "[n]ormally, state actors are liable only for their own acts, and not the violent acts of third parties."  *Rost ex rel K.C. v. Steamboat Springs RE-2 School Dist.*, 511 F.3d 1114,  1125 (10th Cir. 2008).  Thus, a State's failure to protect an

---

*LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 652 (1999) *see also Farmer v. Kansas State Univ.*, 918 F.3d 1094, 1106 (10th Cir. 2019).

individual against private violence generally does not constitute a violation of the Due Process Clause. *Id.* (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989).  There are two exceptions to this general rule.  *Id.* at 1126.  Plaintiff relies on the danger creation theory, which provides that a state may "be liable for an individual's safety if it created the danger that harmed the individual.'"  *Id.* (quotation omitted).  "A danger creation claim must meet a six-part test: (1) the state entity and individual actors created the danger or increased the plaintiff's vulnerability to it; (2) plaintiff was a member of a limited and specifically definable group; (3) defendant's conduct put plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious and known; (5) defendants  acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, shocks the conscience."  *Id.* According to the Tenth Circuit*,* "[t]hese factors counsel that application of danger creation as a basis for § 1983 claims is reserved for exceptional circumstances.'"  *Ruiz v. McDonnel*, 299 F.3d 1173, 1184 (10th Cir. 2002) (quotation omitted).

Here, the Court agrees with Defendants that Plaintiff has not met "the extraordinarily high threshold of pleading necessary to suggest a plausible claim for violation of h[er] substantive due process rights under the Fourteenth Amendment." *Perry v. Taser Int'l Corp.*, 07-cv-00901-REB-MJW, 2008 WL 961559, *2 (D. Colo. April 8, 2008). First, with regard to elements one and three, the Tenth Circuit has characterized the danger creation theory as a "narrow exception" that "applies only when a state actor 'affirmatively acts to create, or increases a plaintiff's vulnerability to, danger from private violence.'"  *Moore v. Guthrie*, 438 F.3d 1036, 1042 (10th Cir. 2006) (quoting *Currier v. Doran,* 242 F.3d 905, 923 (10th Cir.2001)).  "Affirmative conduct for purposes of § 1983

should typically involve conduct that imposes an immediate threat of harm, which by its nature has a limited range and duration." *Ruiz*, 299 F.3d at 1183; *see also Gray v. Univ. of Colo. Hosp. Auth.*, 672 F.3d 909, 916 (10th Cir. 2012) (noting that invocation of the danger creation theory "necessarily involves affirmative conduct on the part of the state in placing the plaintiff in danger").

Here, Plaintiff's claims are premised on the repeated allegations that Ranta-Curran and the Doe Defendants *failed* to take action, not that they affirmatively acted to put her in danger.  *See FAC* [#21] ¶¶ 36(i), 51(ii), 64(ii), and 70(ii) (alleging that Defendants are responsible for "failing to initiate any meaningful Title IX investigation"); ¶¶ 36(ii) and 51(iii) (alleging that "Defendants failed to undertake any affirmative actions to ensure that Mrs. Kinoff felt safe on CSM campus"); ¶¶ 37(i) and 52(i) (alleging that "Defendants failed to undertake any communication with Mr. Kinoff").  Allegations that a school district failed to appropriately enforce and follow its policies regarding sexual harassment "sounds in negligence, not deliberate misconduct."  *Rost*, 511 F.3d at 1126; *see also McClain v. Denver Health & Hosp. Auth.*, No. 17-cv-2238-PAB-NRN, 2018 WL 4698595, at *5 (D. Colo. Sept. 30, 2018) (finding that one instance of sexual assault on a patient in a hospital did not shock the conscience, and finding that the mere failure to protect does not constitute an affirmative act sufficient to confer liability under the danger creation doctrine).[8]

The only affirmative conduct that Plaintiff alleges is the opening and closing of a Title IX Report on January 30, 2015.  However, the abuse from Student ended on January

---

[8]    The cases relied on by Plaintiff are distinguishable.  In both cases, state actors physically placed children into an environment knowing that a danger could exist.  *See Currier*, 242 F.3d at 919-920; *Armijo*, 159 F.3d at 1264.

24, 2015, when Plaintiff apparently left the relationship (FAC [#21] ¶¶ 15, 26), and Plaintiff does not allege that he made any threats to her regarding further assaultive behavior. Thus, Defendants cannot be liable under the danger creation theory. *See Armijo by and through Chavez v. Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1263 (10th Cir. 1998) ("If the danger to the plaintiff existed prior to the state's intervention, then even if the state put the plaintiff back in that same danger, the state would not be liable because it could not have created a danger that already existed.").[4]

The Court also finds that Plaintiff's allegations do not "demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995). Thus, negligence is not sufficient to shock the conscience, and "'a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power.'" *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1222 (10th Cir. 2006) (quoting *Moore*, 438 F.3d at 1040). "A claim is established only when the defendant's conduct manifests either an intent to harm or reckless conduct, that is, an 'aware[ness] of a known or obvious risk that was so great that it was highly probable that serious harm would follow and he or she proceeded in conscious and unreasonable disregard of the consequences.'" *Perry*, 2008 WL 961559, *2 (quoting *Uhlrig*, 64 F.3d at 573-74 and n. 8).

Here, it is unclear exactly what Mines or its employees knew about the assaultive behavior. While Plaintiff alleges that an employee of Mines gave her information on signing up for counseling, again she does not allege what that employee actually knew (or even reasonably should have known). Moreover, as discussed earlier, while Plaintiff

alleges that Mines opened and closing a Title IX Report the same day, on January 30, 2015 (FAC [#21] ¶ 26), Plaintiff does not allege what the actual contents of the Report were, and thus the details of what the Title IX office actually knew, facts which are important particularly because Plaintiff does not allege that she told anyone at Mines about the abuse she suffered.  While Plaintiff states in her Response [#29], that "[g]iven that Defendant Ranta-Curran was serving as the lead Title IX coordinator for Mines at that time, it is difficult to imagine that she would not have been aware of this report." *Id.* at 16.  However, this is conjecture and has not been alleged in the FAC [#21]. Accordingly, the Court finds no allegations from which it can infer that Defendants were aware of a known or obvious risk that was so great that it was highly probable that serious harm to Plaintiff would result, let alone that they proceeded in conscious and unreasonable disregard of the consequences.[9]

Based on the foregoing, it is recommended that the Motion [#23] also be granted as to the merits of the substantive due process claim because Plaintiff failed to plead a plausible claim.

## IV.  Conclusion

In conclusion, for the reasons stated above,

---

[9]    In comparison, as Defendants highlight, federal courts have found a substantive due process violation under a danger creation theory when school officials paddle a nine-year-old until the paddle breaks and blood soaks through her clothes, but not when school officials force a mentally disabled ten-year-old to clean out a clogged toilet with his bare hands. *See Perry*, 2008 WL 961559, *2 ("The universe of circumstances that have been found sufficient to meet this test is limited indeed[,]" and citing decisions from district courts in this circuit that "further suggest the extremely high degree of outrageousness that must be shown to constitute a violation of substantive due process").
.

IT IS HEREBY **RECOMMENDED** that Defendants' Motion [#23] be **GRANTED**, and that the claims in Plaintiff's Amended Complaint [#21] be **DISMISSED WITH PREJUDICE**.  Because the claims are time-barred, the Court finds that amendment would be futile.  *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir.2006).

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is[,] assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  February 9, 2023

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge

- 17 -