IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02657-RMR-KLM

MARA NICHOLE KINOFF,

Plaintiff,

v.

COLORADO SCHOOL OF MINES BOARD OF TRUSTEES, et al.,

Defendants.

**DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTION TO REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE KRISTEN L. MIX**

Defendants, the Board of Trustees of the Colorado School of Mines and Karin Ranta-Curran (collectively, "CSM"), through undersigned counsel, request the Court to adopt the Recommendation of United States Magistrate Judge Kristen L. Mix ("Recommendation") [#40]. In support, Defendants submit the following Response to Plaintiff's Objection [#41] to the Recommendation:

## I. Background[1]

Plaintiff Mara Nichole Kinoff ("Plaintiff") was a student at CSM from Fall 2014 to Spring 2016. *See* Plaintiff's First Amended Complaint ("FAC") [#21] at ¶ 2. In November 2014, Plaintiff began a romantic relationship with another, unidentified CSM student that turned "abusive", and she was "physically assaulted [] on several occasions." *Id.* at ¶¶ 13-14. On January 24, 2015, the other student

---

[1] The factual allegations in this case are thoroughly outlined in the First Amended Complaint [#21], Defendants' Motion to Dismiss First Amended Complaint [#23], and Magistrate Mix's Recommendation [#40]. As such, Defendants only give a brief recitation of the factual background here.

slapped Plaintiff with enough force to knock the wind out of her. *Id.* at ¶ 16. Plaintiff does not identify the location where this abuse occurred, nor does she allege that she ever informed a CSM employee about the incident or any other alleged threats or abuse.

After the assault, Plaintiff allegedly feared for her safety; her grades slipped; and her mental health continued to deteriorate to the point that she withdrew from CSM in May 2016. *Id.* ¶¶ 20-23. On June 25, 2020, more than five years after the alleged assaults, Plaintiff contacted the CSM Title IX office for the first time and learned that a Title IX report had been filed and closed on January 30, 2015. *Id.* at ¶¶ 26-28. On September 30, 2021, nearly seven years after the alleged assaults, Plaintiff filed this lawsuit.

It should be noted, however, that Plaintiff—whether intentionally, or by mistake—improperly raises new factual allegations in her Objection [#41]. Specifically, Plaintiff repeatedly asserts in her Objection [#41] that she was the victim of a sexual assault while a student at CSM. *See* Objection [#41] at 1-2, 5, 6-7. Plaintiff also repeatedly asserts that she "filed" a Title IX complaint with CSM or "reported" the incident to CSM's Title IX office. *See* Objection [#41] at 1-2, 3, 5, 6-7. Neither of these allegations were raised in Plaintiff's First Amended Complaint ("FAC") [#21] and should not be considered by the Court.

Indeed, it is improper for Plaintiff to raise new claims or allegations in her Objection [#41]. A party may not amend their complaint in a responsive pleading. *Heston v. FirstBank of Colorado*, 2020 WL 4350195, at *2 (D. Colo. July 28, 2020)

2

(unpublished). In ruling on a 12(b)(6) motion to dismiss, the Court is limited to "only the allegations contained within the 'four corners of the complaint.'" *Heston*, at *2 (*quoting Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994)). Therefore, the Court may not consider the new allegations made in Plaintiff's Objection [#41].

It should also be noted that Plaintiff explicitly disavowed the allegation that she was sexually assaulted in her Response to Defendants' Motion to Dismiss ("Response to MTD") [#29]. *See* Response to MTD at 11 ("While *Mrs. Kinoff was not sexually assaulted*, domestic violence is well understood to be a deeply traumatic experience, often leaving victims with profound feelings of fear towards their attacker.") (emphasis added). Further, Plaintiff's Complaint contradicts her other new allegation that she filed a complaint or reported the alleged incident to CSM's Title IX office. *See* FAC [#21] at ¶ 16 (". . . Mrs. Kinoff was never informed by Defendant Ranta-Curran or any Doe Defendant if a Title IX or police report had been filed on her behalf."); ¶¶ 26-27 (". . . Mrs. Kinoff sent an email to the current CSM Title IX coordinator inquiring whether a Title IX report had ever been filed regarding the domestic violence she suffered from Student . . . . [CSM's response to her email] was the first time Mrs. Kinoff was made aware of the Title IX report."). Because neither of these allegations were raised in Plaintiff's FAC [#21], the Court should disregard them.

### III. Argument

#### A. Statute of Limitations

This Court should adopt Magistrate Mix's Recommendation [#40], in part, because it correctly holds that the statute of limitations bars Plaintiff's claims. Plaintiff argues that Magistrate Mix erred in determining that Plaintiff was required to "diligently discover" that CSM had failed to investigate and protect her. *Id.* at 4. As outlined below, Magistrate Mix made no such determination, and the Recommendation [#40] appropriately applies the statute of limitations to Plaintiff's claims.

The parties agree the applicable statute of limitations for Title IX and § 1983 is determined by Colorado's personal injury statute. *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1212-13 (10th Cir. 2014). Personal injury actions must be filed within two years in Colorado. § 13-80-102, C.R.S. The time of a claim's accrual is a matter of federal law and it is "the standard rule that accrual occurs when the plaintiff has a complete and present cause of action, that is when the plaintiff can file suit and obtain relief." *Id.* at 1215 (*quoting Wallace v. Kato*, 549 U.S. 384 (2007)).

The dispute in this case centers on when Plaintiff discovered, or should have discovered, the facts necessary to establish her claims. Plaintiff asserts that the statute of limitations began to run on June 25, 2020, when she learned that CSM's Title IX office opened and closed her "case" on the same day, because that is the date she became aware of the facts necessary to establish her claims. *See* Objection [#41]

4

at 3-5. Contrary to Plaintiff's assertion, Magistrate Mix correctly applied the "discovery rule" to Plaintiff's claims in finding that Plaintiff's cause of action began to accrue, at the latest, in May 2016 when Plaintiff left CSM. *See* Recommendation [#40] at 7-10.

Under the discovery rule, a claim begins to accrue when the plaintiff "knew or should have known the facts necessary to establish her cause of action." *Varnell*, 756 F.3d at 1216; *see also Fratus v. Deland*, 49 F.3d 673, 675 (10th Cir. 1995) ("A civil rights action accrues when facts that would support a cause of action are or should be apparent."). The plaintiff "need not have conclusive evidence of the cause of an injury . . . to trigger the statute of limitations." *Alexander v. Oklahoma*, 382 F.3d 1206, 1216 (10th Cir. 2004). Instead, the question is "whether the plaintiff knew of facts that would put a reasonable person on notice that wrongful conduct caused the harm." *Id.*

As outlined in the Recommendation, the facts supporting Plaintiff's cause of action were or should have been apparent to Plaintiff by at least May of 2016, when she withdrew from CSM. *See* Recommendation [#40] at 9-10 (Plaintiff allegedly lived in fear of encountering her perpetrator between January 2015 and May 2016; she was aware her perpetrator never faced discipline and graduated from CSM; and she was aware that no one from CSM reached out to her to discuss her Title IX-related incident). Although Magistrate Mix refers to the fact that Plaintiff did not attempt to "diligently discover" the facts about CSM's response to her Title IX incident, the findings in the Recommendation [#40] do not impose any duty on Plaintiff other than

5

to "exercise reasonable diligence" in discovering facts to support her claim. *See* Recommendation [#40] at 10. Indeed, all plaintiffs must use "reasonable diligence in seeking to discover facts giving rise to a claim for relief." *Alexander*, 382 F.3d at 1216. Because Plaintiff waited over five years to contact CSM about her Title IX allegations, and nearly seven years before filing this suit, *see supra* Section I, Magistrate Mix's Recommendation [#40] correctly concludes that Plaintiff's claims are barred by the statute of limitations.

### B. Title IX Claim

Plaintiff finds fault with Magistrate Mix's application of Title IX regulations to her claim. *See* Objection [#41] at 5-6. As outlined below, this objection is without merit. The Recommendation [#40] appropriately finds that Plaintiff's Title IX claim fails, and this Court should adopt the Recommendation in its entirety.

According to Plaintiff, the Recommendation [#40] improperly references Title IX regulations that went into effect in August 2020, not the regulations in effect during 2015-2016 when the incidents underlying Plaintiff's FAC [#21] took place. *See* Objection [#41] at 5. Plaintiff argues that Magistrate Mix should not have applied the new "exercises substantial control" standard, but the old "behaved 'reasonably' when responding to [a] Title IX complaint" standard. *Id.* Notably, Plaintiff's Objection [#41], Response to MTD [#29], and FAC [#21] cite to the same Title IX regulation, C.F.R. § 106.44, referenced by Magistrate Mix. *See* Recommendation [#40] at 11. And further, Plaintiff has not, prior to her Objection

[#41], articulated a difference between the old and new standards, nor has she ever espoused the application of one over the other.

Nevertheless, such application is ultimately of little consequence to the Recommendation [#40]. The thrust of Magistrate Mix's conclusion on the Title IX claim is that Plaintiff never identified where she was assaulted or that CSM had any control at all over that location. *See* Recommendation [#40] at 11. Indeed, case law predating the Plaintiff's allegations has held that "Title IX narrowly circumscribe[s] the set of parties whose known acts of sexual harassment can trigger some duty to respond" on the part of a university. *Davis v. Monroe Cnty. Bd. Of Educ.*, 526 U.S. 629, 644 (1999). Therefore, a university's liability in the Title IX context is limited to "circumstances wherein the [university] exercises substantial control over both the harasser and the context in which the known harassment occurs." *Id.* at 645.

Plaintiff has not alleged, nor supported the notion, that CSM was aware of when and where she suffered abuse. There is also no allegation that CSM was aware of the nature of the abuse or by whom it was committed. As such, the Court should adopt Magistrate Mix's Recommendation [#40] regarding Plaintiff's Title IX claim.

## C. Substantive Due Process Claim

According to Plaintiff, the Recommendation [#40] improperly concludes that she does not have sufficient evidence to support a due process claim. *Id*. On the contrary, Magistrate Mix held that Plaintiff's due process claim should be dismissed

7

"because Plaintiff failed to plead a plausible claim." Recommendation [#40] at 16. As outlined below, the conclusions reached in the Recommendation [#40] about Plaintiff's substantive due process claim are supported by case law and the record in this case.

Plaintiff argues that by closing her Title IX "file" and failing to investigate her Title IX incident, CSM was deliberately indifferent to Plaintiff and placed her in danger, thereby violating her due process rights. *See* Objection [#41] at 6-7. However, Plaintiff's argument is premised on factual allegations that were not contained in Plaintiff's Complaint: that she filed a report notifying CSM she had been sexually assaulted. *See* Objection [#41] at 6-7. Plaintiff has not alleged, prior to her Objection [#41], that she was sexually assaulted. *See supra* Section I. And more importantly to Plaintiff's due process claim, she has never before alleged that she filed a report of any incident with CSM. *Id.*[2]

Plaintiff relies on the danger creation theory to support her due process claim. *See* FAC [#21] at ¶¶ 60-68. The danger creation theory is a "narrow exception [that] applies only when a state actor 'affirmatively acts to create, or increases a plaintiff's vulnerability to, danger from private violence.'" *Moore v. Guthrie*, 438

---

[2] Plaintiff asserts that she "told Mine's [sic] ROTC staff" about the assault. Objection [#40] at 1, 7. Plaintiff was attending CSM on a scholarship from the Army Reserve Officers' Training Corps (Army ROTC). *Id.* at ¶ 12. However, Army ROTC is a part of the United States government, 10 U.S.C. § 2101, *et seq.*, and CSM must host Army ROTC to be eligible for federal funding. 10 U.S.C. § 983. Plaintiff refers to Army ROTC as "Mine's [sic] ROTC staff," but the Court is not bound by statements that are contrary to law, as the Army ROTC is a separate and distinct entity from CSM. Indeed, ROTC cadre are active-duty members of the United States Army and federal employees. 10 U.S.C. § 2111. Active-duty Army personnel are generally prohibited from accepting concurrent State employment, 10 U.S.C. § 973(b)(3), and there is no allegation that the unnamed ROTC staff member that Plaintiff allegedly informed of the assault was also a CSM employee.

8

F.3d 1036, 1042 (10th Cir. 2006) (quoting *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001)). A due process claim brought under the danger creation theory must meet a six-part test, as outlined in Magistrate Mix's analysis. *See* Recommendation [#40] at 13 (quoting *Rost ex rel K.C. v. Steamboat Springs RE-2 School Dist.*, 511 F.3d 1114, 1126 (10th Cir. 2008)). Following a detailed analysis, the Recommendation [#40] ultimately concludes that Plaintiff's FAC [#21] fails to meet the "extraordinarily high threshold of pleading" necessary to sustain her substantive due process claim. *Id.* (quoting *Perry v. Taser Int'l Corp.*, 07-cv-00901-REB-MJW, 2008 WL 961559, *2 (D. Colo. April 8, 2008).

Here, Plaintiff's due process claim is based on the assertion that CSM "*failed* to take action, not that [CSM] affirmatively acted to put her in danger." Recommendation [#40] at 14 (citing FAC [#21] at ¶¶ 36(i)-(ii), 37(i), 51(ii)-(iii), 52(i), 64(ii), 70(ii)). The only affirmative action Plaintiff alleges is the opening and closing of a Title IX report. *See* FAC [#21] at ¶ 64(ii). As the Recommendation [#40] correctly notes, however, CSM opened/closed Plaintiff's Title IX file *after* all the threats or assaultive behavior alleged by Plaintiff had occurred. *See* Recommendation [#40] at 14-14 (citing FAC [#21] ¶¶ 15, 26). Thus, Defendants cannot be liable for *creating* a danger to Plaintiff.

Importantly, Plaintiff's FAC [#21] does not allege that she ever informed a CSM employee about the assaultive behavior. Accordingly, the FAC [#21] is devoid of any allegations regarding what CSM knew about the abuse or what, specifically, was contained within the Title IX office's file about Plaintiff's allegations. Thus, as

9

Magistrate Mix correctly concluded, it cannot be inferred from Plaintiff's allegations that CSM was "aware of a known or obvious risk" that Plaintiff would be harmed, "let alone that they proceeded in conscious and unreasonable disregard of the consequences." Recommendation [#40] at 16. Having found these elements of the danger creation theory also lacking from Plaintiff's allegations, the Magistrate appropriately recommends dismissal of Plaintiff's substantive due process claim for failing to state a claim for relief. *Id.*

### III. Conclusion

For the reasons stated above, the Court should overrule Plaintiff's Objection [#41] and adopt the Recommendation of United States Magistrate Judge Kristen L. Mix [#40].

DATED this 8th day of March, 2023.

PHILIP J. WEISER
Attorney General

*/s/ R. Warren Beck*
R. WARREN BECK, No. 56004*
Assistant Attorney General
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 6th Floor
Denver, CO 80203
(720) 508-6144, warren.beck@coag.gov

ATTORNEY FOR DEFENDANTS

*Counsel of record

## **CERTIFICATE OF SERVICE**

I certify that I served the foregoing DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTION TO REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE KRISTEN L. MIX upon all parties herein by filing copies of same using the ECF System, this 8th day of March 2023 addressed as follows:

Keith Altman
The Law Office of Keith Altman
33228 West 12 Mile Rd, Ste 375
Farmington Hills, MI 48334
keithaltman@kaltmanlaw.com

*Attorney for Plaintiff*

                                                      */s/ Jen Davis-Weiser*